1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Nakia V. Porter, et al.,                              No. 2:21-cv-01473-KJM-JDP

12                          Plaintiffs,                     ORDER

13          v.

14   County of Solano, et al.,

15                          Defendants.

16

17          Defendants City of Dixon, Dixon Police Department, Chief Robert Thompson, Officer

18   Gabriel Hollingshead and Officer Aaron Williams (collectively, the Dixon defendants) move to

19   dismiss the claims against them in this civil rights action.  Mot. to Dismiss (MTD), ECF

20   No. 26-1.  The following plaintiffs oppose the motion: Nakia Porter, acting on her own behalf and

21   on behalf of her two minor daughters, L.P. and A.P.; Joe Berry Powell, Jr.; and Clifton Powell,

22   acting on behalf of his minor daughter and Ms. Porter's minor niece, O.P.  Opp'n, ECF No. 31.

23   Defendants replied.  Reply, ECF No. 32.  The court heard argument on May 27, 2022, with Yasin

24   Almadani and Ahmed Ibrahim appearing for plaintiffs and Danielle Lewis and Jacob Graham

25   appearing for defendants.  For the reasons below, the court **grants the motion to dismiss in part**

26   **with leave to amend**.

1

1   **I.   FACTUAL ALLEGATIONS**

2        This case involves allegations against both the Dixon defendants and other defendants

3   affiliated with the County of Solano, including the Solano County Sheriff's Office and numerous

4   sheriff's deputies (collectively, Solano defendants).[1]  Second Am. Compl. (SAC) at 2, ECF No.

5   15.  Because only the Dixon defendants move to dismiss, the court summarizes the events and

6   allegations against them, taking plaintiffs' allegations as true at this stage.

7        In early August 2020, Ms. Porter and her father Mr. Powell were driving home to

8   Sacramento from Oakland, California.  SAC ¶ 26.  Ms. Porter's two daughters, ages six and four,

9   and her niece, age three, were in the back of the car.  *Id.*  About an hour into the two-hour drive,

10  Ms. Porter asked her father if he would drive so that she was not driving while fatigued.  *Id.* ¶ 28.

11  It was approximately 9 p.m. when she pulled over onto a quiet dead-end road in Dixon, California

12  to switch drivers.  *Id.*  As Ms. Porter was walking behind her car and toward the passenger side of

13  the vehicle, she noticed a Sheriff's patrol car with its lights on and heard Deputy Lisa McDowell

14  say something to her.  *Id.* ¶ 29.  Ms. Porter explained to Deputy McDowell that she was switching

15  seats with her father.  *Id.* ¶ 30.  Deputy McDowell indicated this was fine but reiterated

16  Ms. Porter needed to get back into the car.  *Id.*  As Mr. Powell exited the car to walk to the

17  driver's side, Deputy Dalton McCampbell pointed his gun at the car and ordered Ms. Porter back

18  into the car.  *Id*. ¶ 31.  Ms. Porter explained she was switching drivers, told the deputies there

19  were children in the car, and asked if the deputies wanted her to go back to the driver's side.  *Id.*

20  Deputy McCampbell said, "Yes, get back in the car," as Mr. Powell got back into the passenger's

21  seat of the car.  *Id.*  As Ms. Porter returned to the driver's seat, Deputy McCampbell yelled, "You

22  know what, detain her," placed her in an arm-lock, and handcuffed her.  *Id*. ¶ 33.

23        Ms. Porter, a petite woman, did not resist Deputy McCampbell as he pinned her up against

24  her car, in full view of the three children inside.  *Id.* ¶¶ 9, 32, 34, 35.  When Ms. Porter asked why

25  she was being arrested, the deputies cited a noncriminal infraction for a possibly mismatched

26  license plate.  *Id.* ¶ 36.  Ms. Porter had forgotten to remove a Maryland license plate from the

---

[1] If unspecified, "defendants" refers to the Dixon defendants.

1    front of her car.  *Id.* ¶ 49.  The back plate was correct, the car was properly registered in

2    California, and it belonged to her.  *See id.* ¶ 48.  The cited infraction does not warrant an arrest,

3    and neither deputy issued a citation or ticket.  *Id.* ¶¶ 36, 48.

4         The deputies then dragged Ms. Porter out of view of their car's dashboard cameras, forced

5    Ms. Porter onto her stomach on the ground, and severely beat her while Deputy McCampbell

6    straddled her back.  *Id.* ¶¶ 39–40.  Ms. Porter struggled under his weight, unable to breathe and

7    fearful for her life.  *Id.*  She eventually lost consciousness, but Deputy McCampbell remained on

8    top of her for another full minute.  *Id.* ¶ 40.  The deputies then dragged Ms. Porter's unconscious

9    body to their vehicle and tossed her inside.  *Id.* ¶ 41.  A video of these events showed she was

10   unconscious for five minutes or longer; the deputies told paramedics it was just seconds.  *Id.*

11   ¶¶ 41, 51.

12        At some point "[a]fter the assault," Officers Hollingshead and Williams of the Dixon

13   Police Department arrived, along with several other Solano County Sheriff's Deputies.  *See id.*

14   ¶¶ 50, 83.[2]  The officers ordered Mr. Powell out of the car and ordered him to walk backwards, at

15   gunpoint, over thirty feet with his hands behind his head.  *Id.* ¶ 43.  Officer Hollingshead had his

16   shotgun "out and oriented in the same direction" as Mr. Powell and the children in the car.  *Id.*

17   Mr. Powell fully complied with all orders, calmly reiterated that he and his daughter had stopped

18   to switch drivers, and reminded the officers that his three young granddaughters were now alone

19   in the car.  *Id.* ¶¶ 45–46.  Deputy McCampbell "handcuffed Mr. Powell and placed him in [Dixon

20   City Police Department] Officer Williams' police vehicle after confirming with Officer Williams

21   that the vehicle contained 'a cage.'"  *Id.* ¶ 44.  Throughout this interaction, Deputy McCampbell,

22   who is white, called Mr. Powell, who is a Black man several years his senior, "young man."  *Id.*

23   To Mr. Powell, this "sounded like the racial slur 'boy' historically used to demean Black men."

24   *Id.*  The two deputies and two Dixon City officers then "swarmed Ms. Porter's vehicle at gun

25   point further terrorizing the children," with Officer Hollingshead "donning his shotgun" as they

---

[2] Plaintiffs also allege, "After the Defendant Deputies had assaulted and imprisoned Ms. Porter, numerous other law enforcement officers (from the Solano County Sheriff's Office and the Dixon Police Department) arrived at the scene . . . ."  *Id.* ¶ 83.

1  approached the car. *Id.* ¶ 46. Officers Williams and Hollingshead, along with Solano defendants,

2  detained the three children for an hour while "repeatedly shining police flashlights" in their faces

3  and "searching the car." *Id.* ¶ 47. The officers found nothing. *Id.*

4        Ms. Porter was denied proper medical care for what was likely a severe concussion, *id.*

5  ¶ 41, imprisoned in Solano County jail overnight, *id.* ¶ 57, and ultimately released after her

6  husband posted a $25,000 bond. *Id.* Mr. Powell was detained for approximately an hour, "a

7  significant portion of which" he was in a cage inside Officer Williams's police cruiser. *Id.* ¶ 61.

8  The District Attorney's Office ultimately declined to prosecute Ms. Porter for any crime. *Id.*

9  ¶ 60. Mr. Powell was never charged with any crime.

10        Ms. Porter suffered severe physical and psychological trauma. *Id.* ¶¶ 63–68. Mr. Powell

11  and the children also suffered psychological trauma. *Id.* ¶¶ 67, 69–70. Driving between

12  Sacramento and Oakland now causes them "fear and anxiety as a result of what they experienced

13  at the hands of the Solano County Sheriff's deputies and Dixon Police officers." *Id.* ¶ 71.

14        Plaintiffs filed their complaint against Solano defendants in August 2021. *See generally*

15  Compl., ECF No. 1. Plaintiffs did not learn of the involvement of Officers Hollingshead and

16  Williams "in the violations alleged" until early 2022. SAC ¶ 93. Plaintiffs previously thought

17  these two officers were Solano County Sheriff's deputies, and thus that they had timely submitted

18  their administrative claim based on their actions. *Id.* Within two days of learning the identities of

19  Officers Hollingshead and Williams, plaintiffs filed administrative claims against them. *Id.* ¶ 96.

20  Plaintiffs filed the operative second amended complaint shortly thereafter. *See* ECF No. 15. It

21  includes thirteen claims, twelve against the Dixon defendants, under both state and federal law.[3]

22  The Dixon defendants move to dismiss all of these claims. *See generally* MTD. Plaintiffs do not

23  oppose the motion to dismiss their claims against the Dixon Police Department and the Chief of

24  Police, who is named in his official capacity only. *See* MTD at 1 nn.1–2; Opp'n at 1 n.2.[4] The

---

[3] Plaintiffs did not bring claim four, alleging false statements and fabrication of evidence, against the Dixon defendants.

[4] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1    court dismisses the claims against these defendants.  The twelve claims against the City of Dixon

2    and Officers Hollingshead and Williams remain in dispute.

3    **II.     LEGAL STANDARD**

4           A party may move to dismiss for "failure to state a claim upon which relief can be

5    granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a

6    "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

7    *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v.*

8    *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The court assumes all factual

9    allegations are true and construes "them in the light most favorable to the nonmoving party."

10   *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch.*

11   *of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do

12   not "plausibly give rise to an entitlement to relief," the motion must be granted.  *Ashcroft v. Iqbal*,

13   556 U.S. 662, 679 (2009).

14          A complaint need contain only a "short and plain statement of the claim showing that the

15   pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl.*

16   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned

17   accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at

18   678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.*

19   (citing *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task

20   drawing on "judicial experience and common sense."  *Id.* at 679.

21   **III.    ANALYSIS**

22          The court addresses each claim and argument in turn, beginning with plaintiffs' state law

23   claims.

24   /////

25   /////

26   /////

27   /////

28   /////

## A.   California Government Claims Act

Defendants argue plaintiffs' state law claims are time barred under the California Government Claims Act.  In relevant part this Act provides:

> [N]o suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . .

Cal. Gov't Code § 945.4.  "The filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an element that a plaintiff is required to prove in order to prevail." *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983, 990 (2012) (citation and marks omitted).  Applying state law, at least one other federal court has found that "[p]resentation of a written claim and action on or rejection of the claim by the Government Claims Board are conditions precedent to suit." *Kennedy v. Cnty. of Contra Costa, et al.*, No. 19-04280, 2021 WL 3173224, at *8–9 (N.D. Cal. July 27, 2021) (citing Cal. Gov't Code § 945.4; *Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001)).  A government claim based on personal injury is timely if presented to the public entity within six months of accrual of the cause of action.  Cal. Gov't Code § 911.2(a).

While plaintiffs concede they did not present their state law claims regarding the Dixon defendants to the City of Dixon until January 6, 2022—well over six months after the alleged violations—they argue that California's "discovery rule 'permits delayed accrual [of a cause of action] until a plaintiff knew or should have known of the wrongful conduct at issue.'"  Opp'n at 21 (quoting *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (quoting *April Enter., Inc. v. KTTV and Metromedia, Inc.*, 147 Cal. App. 3d 805, 832 (1983))); *see also Manguso v. Oceanside Unified Sch. Dist.*, 88 Cal. App. 3d 725, 730 (1979) ("It is not the policy of the law to unjustly deprive one of his remedy.").  "The discovery rule has [also] been observed as a matter of federal law." *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).  "To rely on the discovery rule, a plaintiff must plead specific facts describing the time and manner of discovery and the inability to have discovered the claim earlier despite due diligence." *Parrish v. Nat'l Football*

1    *League Players Ass'n*, 534 F. Supp. 2d 1081, 1089 (N.D. Cal. 2007).  The rule is

2    "an equitable rule, intended to avoid unjustly depriving plaintiffs of a remedy for their injuries

3    when they have been diligent in seeking to protect their rights."  *Eisenberg Vill. of Los Angeles*

4    *Jewish Home for the Aging v. Suffolk Constr. Co., Inc.*, 53 Cal. App. 5th 1201, 1213 (2020),

5    *review denied* (Nov. 24, 2020).

6         Defendants reply the "delayed discovery rule delays the accrual of a cause of action until

7    the Plaintiff discovers or has reason to discover the *factual basis* for its elements, not the identity

8    of the wrongdoer."  Reply at 6 (emphasis in original) (citing *K.J. v. Arcadia Unified Sch. Dist.*,

9    172 Cal. App. 4th 1229, 1241 (2009)) and *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988)

10   ("Once the plaintiff has a suspicion of wrongdoing . . . Plaintiff must go find the facts; she cannot

11   wait for the facts to find her")).  However, neither of the cases on which defendants rely suggest

12   that discovering the factual basis for a cause of action cannot, in some circumstances, encompass

13   discovering the identity of a wrongdoer.  Defendants' proposed narrow reading of the discovery

14   rule would undermine its equitable intent.

15        Defendants also argue, "While presenting a claim to the wrong entity may be grounds for

16   writ relief under Cal Gov. Code, § 946.6," which allows plaintiffs to petition a superior court for

17   relief from the requirements of section 945.4, "it does not toll the accrual date for presentation

18   purposes," *id.* (citing *Bettencourt v. Los Rios Community College Dist.*, 42 Cal.3d 270 (Cal.

19   1986)).  Defendants contend plaintiffs' reliance on the delayed discovery rule "circumvent[s] the

20   late claim and writ relief requirements," and this "failure to follow the correct procedure"

21   deprives the court of jurisdiction.  *Id.* (citing *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1182

22   (E.D. Cal. 2005)).  But the discovery rule serves to delay accrual of the cause of action, so

23   plaintiffs need not have sought relief in the form of a writ.  *See, e.g., Martinez v. Cnty. of Sonoma*,

24   No. 15-01953, 2015 WL 5354071, at *4 (N.D. Cal. Sept. 14, 2015) (observing "California courts

25   have acknowledged the 'delayed discovery doctrine' may toll the presentation requirement" of

26   the California Government Claims Act).

27        Here, plaintiffs first filed a complaint in and against Solano County defendants and

28   persons they identified as Does 1–20 in August 2021.  *See* Compl.  Plaintiffs did not learn that

Dixon Police Department Officers Hollingshead and Williams were involved "in the violations alleged" until early 2022. SAC ¶ 93. Until then, plaintiffs thought these two officers were Solano County Sheriff's deputies, and thus they had timely submitted their administrative claim based on their actions. *Id.* Within two days of learning the identities and employer of Officers Hollingshead and Williams, plaintiffs filed administrative claims against the officers with Dixon. *Id.* ¶ 96. Plaintiffs filed the operative second amended complaint shortly thereafter. *See* Docket, ECF No. 15. Plaintiffs have acted diligently in pursuing their rights and pointed to an "equitable basis for applying the discovery rule." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1253, *as modified* (Dec. 22, 2003). Accordingly, the claims are not time-barred and the court denies defendants' motion to dismiss the state law claims on these grounds.

### B.   Federal Constitutional Claims

#### 1.   Unlawful Seizure (Claim One)

Plaintiffs' first federal constitutional claim, brought on behalf of all plaintiffs— Ms. Porter, Mr. Powell, L.P., A.P., and O.P.—is for unlawful seizure in violation of the Fourth Amendment. "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (quoting *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)). To decide whether a warrantless seizure was "reasonable," a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). The deputies and officers had no warrant, they do not cite any exceptions, and they do not argue their actions were otherwise reasonable under the relevant test. As noted above, they argue instead that they did not participate in the seizure.

An officer may be liable under § 1983 for "integral participation" in a constitutional violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)). " '[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation," *Boyd*

8

1   *v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004), "[b]ut it does require some fundamental

2   involvement in the conduct that allegedly caused the violation." *Blankenhorn*, 485 F.3d at 481

3   n.12.  An officer may be liable for providing armed backup or participating without objection in a

4   police action with knowledge that a particular form of force would be used.  *Boyd*, 374 F.3d at

5   780 (citing *James ex rel. James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) and *Melear v.*

6   *Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989)).  "Being a mere bystander [is] insufficient."

7   *Chuman*, 76 F.3d at 294.

8          Taking Ms. Porter's claims first, Officers Williams and Hollingshead arrived at the scene

9   "[a]fter the [Sheriff's deputies] had assaulted and imprisoned Ms. Porter . . . ." SAC ¶ 83. While

10   the two officers cannot have participated in constitutional violations before they arrived,

11   "participation in an ongoing seizure after any probable cause had dissipated violates the Fourth

12   Amendment." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019).  Here,

13   plaintiffs allege it was readily apparent that they were "unarmed, posed no threat to anyone, and

14   were not engaged in any criminal activity."  *Id.*  Ms. Porter's alleged "continued detention . . . and

15   the use of handcuffs throughout the duration of the detention violated" Ms. Porter's "clearly

16   established Fourth Amendment rights to be free from unlawful arrest and excessive force."  *Id.*

17   Accordingly, the complaint states a claim for unlawful seizure or excessive force against

18   Ms. Porter; the court denies the motion to dismiss in this respect.[5]

19          As to Mr. Powell, "stopping an automobile and detaining its occupants constitute[s]

20   a seizure [and thus implicates the Fourth Amendment] . . . even though the purpose of the stop is

21   limited and the resulting detention quite brief."  *United States v. Choudhry*, 461 F.3d 1097,

22   1100–01 (9th Cir. 2006) (quoting *Delaware v. Prouse*, 440 U.S. 648 (1979)) (internal quotation

23   marks omitted).  "The infringement on personal liberty of any 'seizure' of a person can only be

---

[5] In their opposition, plaintiffs also argue because they "have limited information at this pre-discovery stage, it is unclear whether the Dixon Defendants arrived on the scene during the beating and imprisonment of Ms. Porter and what they observed and did at that time."  Opp'n at 9.  They do not currently allege the Dixon officers arrived while the two Sherriff's Deputies used force against Ms. Porter, and the court must rely on the complaint as currently drafted.  *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

1    'reasonable' under the Fourth Amendment if we require the police to possess 'probable

2    cause' *before* they seize him." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d

3    788, 819 (9th Cir. 2020) (emphasis in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 38 (1968)).

4    "The reasonableness of seizures that are less intrusive than a traditional arrest depends on a

5    balance between the public interest and the individual's right to personal security free from

6    arbitrary interference by law officers." *Brown v. Texas*, 443 U.S. 47, 50 (1979) (quotations and

7    citations omitted).

8           Officers Williams and Hollingshead were both present when Sheriff's deputies ordered

9    Mr. Powell to exit the vehicle and walk backwards at gunpoint with his hands behind his head.

10   SAC ¶ 43.  Officer Hollingshead aimed a shotgun at Mr. Powell and the car while Officer

11   Williams helped Deputy McCampbell seize Mr. Powell in the "cage" of his police cruiser.  *Id.*

12   ¶¶ 43–44.  The complaint further alleges both officers acted in concert with the Sheriff's deputies

13   in detaining Mr. Powell for an hour.  *Id.* ¶ 61.  These allegations permit a plausible inference of

14   the Dixon defendants' liability for integral participation in an unlawful seizure.  *See, e.g.*, *Boyd*,

15   374 F.3d at 780 (provision of armed backup during an unconstitutional search renders an officer a

16   participant, not a bystander); *Nicholson*, 935 F.3d at 691.  The court denies the motion to dismiss

17   Mr. Powell's claims.

18          The three children also state a claim for unreasonable seizure by Officers Hollingshead

19   and Williams.  The two officers allegedly joined the Solano deputies, some with guns drawn,

20   around the car where the children were sitting.  SAC ¶ 46.  They kept the three girls in the car

21   away from their grandfather for approximately an hour.  *Id.* ¶ 61.  This detention was a "seizure"

22   under the Fourth Amendment.  *See Choudhry*, 461 F.3d at 1100–01.  Even if neither officer

23   aimed a weapon at the car, they may together be liable as "integral participants."  They were in

24   effect providing the Sheriff's deputies with armed backup.  *See Boyd*, 374 F.3d at 780.  The court

25   denies the motion to dismiss the children's claims of unlawful seizure against Officers

26   Hollingshead and Williams.

1        **2.      Excessive Force (Claim Two)**

2            Plaintiffs' second federal constitutional claim, brought on behalf of all plaintiffs, is for

3    excessive force in violation of the Fourth Amendment.  The "settled and exclusive" test for

4    deciding whether an officer's force was excessive, and thus unreasonable under the Fourth

5    Amendment, is the "objective" standard described in *Graham v. Connor* and *Tennessee v.*

6    *Garner.  See Mendez*, 137 S. Ct. at 1546 (citing 490 U.S. 386 (1985) and 471 U.S. 1 (1985)).  In

7    that test, the court must "balance the nature and quality of the intrusion on the individual's Fourth

8    Amendment interests against the importance of the governmental interests alleged to justify the

9    intrusion." *Garner*, 471 U.S. at 8 (citation omitted); *see also, e.g., Graham*, 490 U.S. at 396.

10           In some cases, very little force—or no force at all—might be the only objectively

11   reasonable amount of force an officer may use.  *See, e.g., Green v. City & Cnty. of San Francisco*,

12   751 F.3d 1039, 1049 (9th Cir. 2014); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003).

13   In other cases, even deadly force might be reasonable.  *See, e.g., Scott*, 550 U.S. at 386.  But in

14   every case, an officer's conduct "must be judged from the perspective of a reasonable officer on

15   the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation

16   omitted).  "[T]he calculus of reasonableness" must similarly take account of the fact that officers

17   "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and

18   rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at

19   396–97.  An officer may violate the Fourth Amendment by pointing a gun at a suspect when

20   "[t]he crime under investigation was at most a misdemeanor; the suspect was apparently unarmed

21   and approaching the officers in a peaceful way[;] . . . [t]here were no dangerous or exigent

22   circumstances apparent at the time of the detention[;] and the officers outnumbered the plaintiff."

23   *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc); *see also Tekle v. United*

24   *States*, 511 F.3d 839, 845 (9th Cir.2007) ("the pointing of a gun at someone may constitute

25   excessive force, even if it does not cause physical injury"); *Espinosa v. City & Cnty. of San*

26   *Francisco,* 598 F.3d 528, 537 (9th Cir. 2010) ("pointing a loaded gun at a suspect, employing the

27   threat of deadly force, is use of a high level of force").

1    Here, as noted, Officers Williams and Hollingshead were not present when deputies

2    initially used force against Ms. Porter.  *See* SAC ¶ 83.  But their alleged integral participation in

3    the "prolonged detention and handcuffing" of Ms. Porter after any probable cause had dissipated,

4    violated her Fourth Amendment rights to be free from excessive force.  *Nicholson*, 935 F.3d at

5    691.  Accordingly, the court denies defendants' motion to dismiss Ms. Porter's  excessive force

6    claim.

7    Officers Williams and Hollingshead also both were present when Sheriff's deputies

8    ordered Mr. Powell to exit the vehicle and walk backwards at gunpoint with his hands behind his

9    head.  SAC ¶ 43.  Officer Hollingshead aimed a shotgun at Mr. Powell and the car while Officer

10   Williams helped Deputy McCampbell seize Mr. Powell in the "cage" of his police cruiser.  *Id.*

11   ¶ 44.  These allegations permit a plausible inference of defendants' liability for excessive force.

12   *See, e.g.*, *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996) (under ordinary

13   circumstances "drawing weapons and using handcuffs and other restraints will violate the Fourth

14   Amendment" even "when the police have only reasonable suspicion to make an investigatory

15   stop"); *see also Robinson*, 278 F.3d at 1013 (pointing gun at suspect during actual seizure may

16   constitute excessive force); *Tekle*, 511 F.3d at 845; *Espinosa*, 598 F.3d at 538; *Nicholson*,

17   935 F.3d at 691 (unwarranted, prolonged detention in handcuffs may constitute excessive force).

18   The court denies the motion to dismiss Mr. Powell's excessive force claim.

19   The three children also state claims for excessive force against Officers Hollingshead and

20   Williams.  The two officers allegedly joined the Solano deputies, some with guns drawn, around

21   the car where the children were sitting.  SAC ¶ 46.  Courts have found training a weapon on an

22   infant or "holding an infant at gunpoint" to "fall[] outside the Fourth Amendment's objective

23   reasonableness standard" and thus to constitute excessive force.  *Motley v. Parks*, 432 F.3d 1072,

24   1089 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th

25   Cir. 2012) (en banc).  Here as well, even if neither officer aimed a weapon at the car, they may

26   together be liable as integral participants, effectively providing the Sheriff's deputies with armed

27   backup, *Boyd*, 374 F.3d at 780.  The court denies the motion to dismiss the children's claims of

28   excessive force.

### 3.      Unreasonable Search (Claim Three)

Plaintiffs' third federal constitutional claim is also brought on behalf of all plaintiffs, for unlawful search in violation of the Fourth Amendment.  Here, defendants contend "[t]here are no factual allegations that [Dixon defendants] searched the vehicle," but rather only legal conclusions.  MTD at 8, 16.  The court finds otherwise.  Plaintiffs allege that after handcuffing Mr. Powell, the officers and deputies were "continuously illegally searching the car without probable cause, desperately looking for any pretext to justify their illegal conduct."  SAC ¶ 47. These allegations suffice.  Their context makes a claim plausible.  Drawing reasonable inferences in the plaintiffs' favor, as the court must at this stage, the officers had no reason to doubt Mr. Powell's assertion there were just three children in the car.  And according to the complaint, the officers had no reason to suspect any danger, criminal conduct, or the presence of weapons or contraband.  Defendants do not argue the search was reasonable or defend it at all.  The court denies the motion to dismiss plaintiffs' unlawful search claims.

### 4.      Equal Protection Claim (Claim Five)

Alongside the preceding Fourth Amendment claims, plaintiffs also assert a Fourteenth Amendment claim against Officers Hollingshead and Williams on the theory they aided and abetted intentional discrimination.  SAC ¶ 120.  The Dixon officers argue plaintiffs do not state an equal protection claim against them "because there are no allegations of force, seizure, or search, much less an allegation of discriminatory animus by them."  MTD at 16–17.  As explained in the previous section, the complaint plausibly alleges the officers participated in an unlawful use of force, an unreasonable seizure, and an unreasonable search.  The court must therefore consider whether plaintiffs' allegations permit a plausible inference of discriminatory animus.

 "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) (citation omitted).  Here, while plaintiffs allege Deputy McDowell used racially demeaning language with Mr. Powell in front of Officers

1   Williams and Hollingshead, they do not allege the two Dixon officers were motivated by race or

2   harbored racial animus.  Nor do they allege the two Dixon officers treated any of the plaintiffs

3   differently because of their race.   Accordingly, the court grants defendants' motion to dismiss

4   plaintiffs' equal protection claim, with leave to amend if possible within the confines of Rule 11.

5   *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to

6   amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

7   other facts.") (citations and marks omitted).

8           **C.      Qualified Immunity**

9           "Qualified immunity is a judge-made doctrine designed to 'balance[] two important

10  interests—the need to hold public officials accountable when they exercise power irresponsibly

11  and the need to shield officials from harassment, distraction, and liability when they perform their

12  duties reasonably.'"  *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (alterations in

13  original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine is intended to

14  "give[] government officials breathing room to make reasonable but mistaken judgments about

15  open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  The two-pronged test

16  courts generally use to assess whether qualified immunity applies was first articulated in *Saucier

17  v. Katz*, 533 U.S. 194 (2001).  Under that test, the court first "decide[d] whether the facts that a

18  plaintiff has alleged or shown make out a violation of a constitutional right."  *Pearson*, 555 U.S.

19  at 232 (citing *Saucier*, 533 U.S. at 201 and Fed. R. Civ. P. 12, 50, 56).  Then, "if the plaintiff []

20  satisfied this first step, the court [] decide[d] whether the right at issue was 'clearly established' at

21  the time of defendant's alleged misconduct."  *Id.* (citing *Saucier*, 533 U.S. at 201).  The Ninth

22  Circuit has noted that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage

23  raises special problems for legal decision making."  *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir.

24  2018) (citing *Kwai Fun Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004)). However,

25  "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a

26  violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward'

27  with their claims."  *Id.* at 1234 (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*,

28  968 F.2d 865, 872 (9th Cir. 1992)).  A court's "decision at the motion-to-dismiss stage sheds little

14

1   light on whether the government actors might ultimately be entitled to qualified immunity 'were

2   the case permitted to proceed, at least to the summary judgment stage' and the court is presented

3   with facts providing context for the challenged actions." *Id.* (quoting *Kwai Fun Wong*, 373 F.3d

4   at 957).

5          As discussed above, the complaint here states a claim that Officers Williams and

6   Hollingshead violated plaintiffs' Fourth Amendment rights to be free from unlawful seizures,

7   excessive force and unlawful searches.  The court thus considers the second part of the qualified

8   immunity test: whether the law proscribing the alleged conduct was clearly established at the

9   time.

10         Defendants argue Officers Williams and Hollingshead are entitled to qualified immunity

11  against the three Fourth and Fourteenth Amendment claims above because "there is no clearly

12  established precedent to support any claim" against them.  MTD at 18.  In opposition, plaintiffs

13  argue the officers are not entitled to qualified immunity because "[w]hile a right may be clearly

14  established by decisional law, it can also be self-evident in light of pre-existing law."  Opp'n at 13

15  (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

16         The court finds the case law plaintiffs cite in support of the alleged constitutional

17  violations suffices to support, at this stage of the pleadings, plaintiffs' claim that defendants

18  violated clearly established law.  Specifically, it has been clearly established since 2002 or earlier

19  that an officer violates the Fourth Amendment by "drawing weapons" and using restraints, even

20  in situations where police have "reasonable suspicion" to make an investigatory stop.

21  *Washington*, 98 F.3d at 1187; *see also Robinson*, 278 F.3d at 1015 ("pointing a gun to the head of

22  an apparently unarmed suspect during an investigation can be a violation of the Fourth

23  Amendment, especially where the individual poses no particular danger"); *Tekle*, 511 F.3d at 845

24  (same); *Espinosa*, 598 F.3d at 538 (same).  Likewise, it is "well-established" as of 2005 or earlier

25  "that a 'person may not be arrested, or must be released from arrest, if previously established

26  probable cause has dissipated.'"  *Nicholson*, 935 F.3d at 691 (quoting *United States v. Ortiz-*

27  *Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam)).  It is similarly well established that

28  holding young children at gunpoint is excessive.  *Motley*, 432 F.3d at 1089.  The rules of "integral

15

1   participation," *see supra* section III.B.1, also were established well before the events alleged here

2   took place.  *See, e.g.*, *Chuman*, 485 F.3d at 294–95; *Blankenthorn*, 485 F.3d at 481 n.12.

3   Finally, as noted above, defendants essentially concede any search of the vehicle would be

4   unlawful, as the only argument supporting their motion is plaintiffs did not allege they searched

5   the vehicle.  *See* MTD at 16.  In short, no reasonable officer would have believed at the time it

6   was constitutional to aim weapons at and detain three young children and their nonviolent,

7   unarmed, polite, calm and compliant grandfather and separate them for an hour, simply because

8   they had been riding in a car with a license plate from another state.

9   Defendants do point to cases granting qualified immunity to officers "who arrive at the

10   scene with no prior knowledge of the situation and rely on other officers' assessment of the

11   situation."  Reply at 3–4 (citing *Sharp v. City of El Monte*, 16-02097, 2017 WL 11509792, *5-6

12   (C.D. Cal. Sept. 1, 2017), *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008)).  In

13   *Torres v. City of Los Angeles*, the Ninth Circuit found a detective involved in investigating a

14   shooting from a vehicle was entitled to qualified immunity because another official told him,

15   incorrectly, the plaintiff had been positively identified as a passenger in the vehicle.  548 F.3d at

16   1212.  Because the detective "reasonably relied on the (allegedly false) statement" by the official,

17   the court found a reasonable officer in his position "would have believed he had probable cause to

18   arrest" the plaintiff.  *Id.*  Here, while Officers Williams and Hollingshead arrived after the

19   Sheriff's deputies were already there, plaintiffs do not allege the officers deferred to the deputies'

20   assessments, and it is not possible to draw that inference now while viewing the complaint "in the

21   light most favorable to the nonmoving party."  *Steinle*, 919 F.3d at 1160 (quoting *Parks Sch. of

22   Bus., Inc.*, 51 F.3d at 1484).  Drawing inferences in plaintiffs' favor as required, it was readily

23   apparent to Officers Williams and Hollingshead that no force, no detention and no search were

24   necessary.  *See Washington*, 98 F.3d at 1187.

25   For these reasons, defendants are not entitled to qualified immunity in the face of claims

26   one through three.  The court turns to the state-law claims.

1          **D.      Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1) (Claim Six)**

2          Defendants assert the court must dismiss plaintiff's sixth claim under the Bane Act,

3   California Civil Code section 52.1,[6] arguing it "fails for the same reasons Plaintiffs' unlawful

4   seizure, excessive force, unlawful search, and equal protection claims fail," MTD at 20–21, and

5   because the City of Dixon is sued on the basis of *respondeat superior*.

6          The Bane Act provides that a person whose "exercise or enjoyment" of constitutional

7   rights has been interfered with "by threat, intimidation, or coercion" may bring a civil action for

8   damages and injunctive relief.  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 799 (9th Cir.

9   2018).  The essence of such a claim is "the defendant, by the specified improper means . . . tried

10  to or did prevent the plaintiff from doing something he or she had the right to do under the law or

11  force the plaintiff to do something he or she was not required to do."  *Austin B. v. Escondido*

12  *Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007).  As the Ninth Circuit has recently held,

13  based on an analysis of state court precedent, the Bane Act does not require "threat, intimidation

14  or coercion" separate from or even "in addition to" the alleged constitutional violations, which in

15  that case concerned the Eighth Amendment.  *Rodriguez*, 891 F.3d at 799–801 (citing *Venegas v.*

16  *Cnty. of Los Angeles*, 32 Cal. 4th 820 (2004), and collecting cases).

17         Thus, when a Bane Act claim is based on an alleged federal constitutional violation, as

18  here, plaintiffs may rely on the same allegations, that defendant deprived them of a constitutional

19  right and threatened, intimidated or coerced them under the Bane Act.  *See Reese v. Cnty. of*

20  *Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citing *Cornell v. City & Cnty. of San*

21  *Francisco*, 17 Cal. App. 5th 766, 798-99 (2017)).  However, a complaint must also include

---

[6] The Bane Act provides, in pertinent part:

> If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, . . . [that person] may institute and prosecute in his or her own name and on his or her own behalf a civil action . . . .

California Civil Code § 52.1(b)–(c).

1  factual allegations allowing the court to infer the defendant had a "specific intent" to violate the

2  plaintiff's rights.  *See id.* (quoting *Cornell*, 17 Cal. App. 5th at 801); *id.* at 1044 (citing CACI

3  3066, which "characterizes a Bane Act claim as one by the plaintiff that the defendant

4  'intentionally interfered with [or attempted to interfere with] [his/her] civil rights by threats,

5  intimidation or coercion.'" (emphasis omitted)).

6       Here, defendants do not explain or develop their arguments specific to plaintiffs' Bane

7  Act claims.  "Arguments advanced without explanation or development cannot prevail."  *Est. of*

8  *Miller v. Cnty. of Sutter*, No. 22-577, 2020 WL 6392565, at *17 (E.D. Cal. Oct. 30, 2020) (citing

9  *Lexington Ins. Co. v. Silva Trucking, Inc*., No. 14-0015, 2014 WL 1839076, at *3 (E.D. Cal.

10 May 7, 2014)).

11      Accordingly, the court denies defendants' motion to dismiss plaintiffs' Bane Act claim.

12      **E.      Ralph Civil Rights Act (Cal. Civ. Code § 51.7) (Claim Seven)**

13      The Ralph Act provides "[a]ll persons within [California] have the right to be free from

14 any violence, or intimidation by threat of violence, committed against their persons or property

15 because of [race]." Cal. Civ. Code §§ 51.7(a), 51(b).  To establish a Ralph Act claim, "a plaintiff

16 must show '(1) the defendant threatened or committed violent acts against the plaintiff; (2) the

17 defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and

18 (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.'"  *Warren v.*

19 *Marcus*, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015).

20      Plaintiffs allege no facts indicating the actions of Officer Williams or Officer

21 Hollingshead actions were racially motivated.  *See supra* section B.4.  The court grants

22 defendants' motion to dismiss this claim, with leave to amend if possible.

23      **F.      California Government Code section 815.6 and Penal Code section 853.5**
24      **(Claim Eight)**

25      Plaintiffs argue the Dixon officers violated California Penal Code section 853.5,[7] which

26 curtails "the authority [of officers] to execute custodial arrests for offenses so minor that they are

---

[7] California Penal Code section 853.5 provides, in pertinent part: "In all cases . . . in which
a person is arrested for an infraction, a peace officer shall only require the arrestee to present his
or her driver's license or other satisfactory evidence of his or her identity for examination and to

1    designated as infractions," *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir. 1993), by

2    allowing an officer to take an arrestee into custody only if the arrestee first fails to produce

3    satisfactory evidence of his identity.[8]

4         Plaintiffs state a claim for unlawful seizure in violation of the Fourth Amendment and

5    allege the officers did not request evidence of Mr. Powell's identity before detaining him for an

6    hour.  The court denies defendants' motion as to all plaintiffs.

7         **G.      False Imprisonment (Cal. Gov't Code § 815.2) (Claim Nine)**

8         Plaintiff's ninth claim for relief against the Dixon defendants is for aiding and abetting

9    false imprisonment.  SAC ¶¶ 151–156.  "Under California law, the elements of a claim for false

10   imprisonment are: '(1) the nonconsensual, intentional confinement of a person, (2) without lawful

11   privilege, and (3) for an appreciable period of time, however brief.'"  *Young v. Cnty. of*

12   *L.A.,* 655 F.3d 1156, 1169 (9th Cir. 2011) (quoting *Easton v. Sutter Coast Hosp.,* 80 Cal. App. 4th

13   485, 496 (2000)).  False arrest and false imprisonment are the same tort.  *Asgari v. City of*

14   *L.A.,* 15 Cal. 4th 744, 753 n.3 (1997).  A police officer is not immune from liability

15   for false imprisonment, *id.* at 752, unless the officer, "acting within the scope of his or her

16   authority . . . at the time of the arrest, had reasonable cause to believe the arrest was lawful," *see*

17   Cal. Penal Code § 847(b).

18        "Reasonable cause" or "probable cause" is a "well-established" legal standard under

19   California law.  *People v. Adair,* 29 Cal. 4th 895, 904 (2003).  "Reasonable or probable cause

20   means such a state of facts as would lead a man of ordinary caution or prudence to believe, and

21   conscientiously entertain a strong suspicion of the guilt of the accused."  *People v. Mower,*

22   28 Cal. 4th 457, 473 (2002) (citations and marks omitted).  "Reasonable and probable cause may

---

sign a written promise to appear contained in a notice to appear. . . . Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody." Cal. Penal Code § 853.5.

    [8] The California Government Code provides in pertinent part as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov't Code § 815.6.

1  exist although there may be some room for doubt." *Id.*  It is an objective standard; the defendant

2  need not show the officers had enough information to conclude the plaintiff actually committed a

3  crime.  *Adair,* 29 Cal. 4th at 904–05; *Levin v. United Airlines,* 158 Cal. App. 4th 1002, 1018

4  (2008).  A person may be factually innocent, yet an officer have probable or reasonable cause to

5  arrest him.  *Buckheit v. Dennis,* No. 09–5000, 2012 WL 1166077, at \*28–29 (N.D. Cal. Apr. 6,

6  2012) (citing *Adair,* 29 Cal. 4th at 905), *aff'd in relevant part,* 573 F. App'x 662 (9th Cir. 2014).

7  This is essentially the same standard as the federal constitutional standard.  *Davis v. Cnty. of San*

8  *Bernardino,* No. 08–1262, 2009 WL 3838287, at \*5 (C.D. Cal. Nov. 13, 2009) (citing, inter

9  alia, *Mower,* 28 Cal. 4th at 473, and *Adair,* 29 Cal. 4th at 904–05), *aff'd,* 442 F. App'x 300 (9th

10  Cir. 2011).

11  Here, for the same reasons described above, the court denies defendants' motion.  *See*

12  *supra* section B.  The Dixon Police Department also is liable under a *respondeat superior* theory

13  to the same extent as the individual officers.  *See Mary M. v. City of Los Angeles*, 54 Cal. 3d 202,

14  209 (1991) ("Tortious conduct that violates an employee's official duties . . . may nonetheless be

15  within the scope of employment.").

16  **H.     Assault and Battery (Claim Ten)**

17  Plaintiffs' tenth claim is for aiding and abetting assault and battery.  SAC ¶¶ 157–164.

18  "The elements of civil assault are: demonstration of an unlawful intent by one person to inflict

19  immediate injury on the person of another then present.  The tort of assault is complete when the

20  anticipation of harm occurs.  Mere words, however threatening, will not amount to an assault."

21  *A. A. P. v. Sierra Plumas Joint Unified Sch. Dist.*, No. 19-882, 2021 WL 847812, at \*4 (E.D. Cal.

22  Mar. 5, 2021) (quotations and citations omitted).

23  Under California law, a claim for battery by a peace officer requires the plaintiff to show:

24  "(1) the defendant intentionally touched the plaintiff, (2) the defendant used unreasonable force to

25  arrest, prevent the escape of, or overcome the resistance of the plaintiff, (3) the plaintiff did not

26  consent to the use of that force, (4) the plaintiff was harmed, and (5) the defendant's use of

27  unreasonable force was a substantial factor in causing the plaintiff's harm."  *Pryor v. City of*

28  *Clearlake*, 877 F. Supp. 2d 929, 952 (N.D. Cal. 2012) (citing Judicial Council of California, Civil

1    Jury Instruction 1305; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998)).

2    Accordingly, "[p]laintiff must prove unreasonable force as an element of the tort." *Edson*,

3    63 Cal. App. 4th at 1273.  The unreasonable force determination is "analyzed under the

4    reasonableness standard of the Fourth Amendment to the United States Constitution." *Munoz v.*

5    *City of Union City*, 120 Cal. App. 4th 1077, 1102 & n.6 (2004) (citing *Graham*, 490 U.S. at

6    395), *overruled on other grounds*, *Hayes v. County of San Diego*, 57 Cal. 4th 622, 636 (2013).

7         Under California law, "[l]iability may . . . be imposed on one who aids and abets the

8    commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach

9    of duty and gives substantial assistance or encouragement to the other to so act or (b) gives

10   substantial assistance to the other in accomplishing a tortious result and the person's own

11   conduct, separately considered, constitutes a breach of duty to the third person." *Fiol v.*

12   *Doellstedt*, 50 Cal.App.4th 1318, 1325–26 (1996) (quoting *Saunders v. Superior Court,*

13   27 Cal.App.4th 832, 846 (1994), and citing Rest. 2d Torts, § 876).

14        Because Ms. Porter does not allege the Dixon officers were present prior to the Sheriff's

15   Deputies' detaining her in their vehicle, she does not state a claim for assault or battery against

16   the moving defendants here.  *See supra* section III.B.2.1–2.  The court grants the motion to

17   dismiss these two claims as to Ms. Porter, with leave to amend if possible.  The court also grants

18   the Dixon officers' motion to dismiss the clam of battery against the minor children with leave to

19   amend, as the children do not allege they came into physical contact with any officer.

20        The court denies the motion to dismiss the claim of assault brought by Mr. Powell and the

21   children against Officer Hollingshead, whose use of a shotgun could plausibly lead to

22   "anticipation of harm." *A. A. P.*, WL 847812, at *5.  The court also denies the motion to dismiss

23   these plaintiffs' claim of aiding and abetting assault against Officer Williams, whose "integral

24   participation" in the deputies' use of excessive force and unlawful seizure plausibly amounts to

25   aiding and abetting the assault.  Finally, the court denies the motion to dismiss Mr. Powell's claim

26   of aiding and abetting battery against the Dixon officers, who both aided and abetted Deputy

27   McDowell in handcuffing and thus intentionally touched Mr. Powell.

1       **I.**     **Intentional Infliction of Emotional Distress (Claim Eleven)**

2       Plaintiffs' eleventh claim rests on their allegations that the Dixon officers aided and

3 abetted conduct that was "extreme and outrageous" and amounted to an intentional infliction of

4 emotional distress. SAC ¶¶ 165–171. "A cause of action for intentional infliction of emotional

5 distress exists when there is (1) extreme and outrageous conduct by the defendant with the

6 intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

7 plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation

8 of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th

9 1035,1050–51 (2009) (internal quotation marks omitted).

10       Drawing reasonable inferences in plaintiffs' favor, it would be plausible to conclude the

11 Dixon officers' actions were so extreme as to "exceed all bounds of that usually tolerated in a

12 civilized society." *Schneider v. TRW, Inc.,* 938 F.2d 986, 992 (9th Cir. 1991) (quoting *Trerice v.*

13 *Blue Cross of California*, 209 Cal. App. 3d 878, 883 (1989)). It also is reasonable to infer the

14 officers acted with reckless disregard. Thus, for the same reasons the court finds the Dixon

15 defendants liable for violations of plaintiffs' Fourth Amendment rights to be free from unlawful

16 seizure and excessive force, *see supra* section III.B.2.1–2, the court concludes plaintiffs also state

17 a claim for aiding and abetting the intentional infliction of emotional distress. The court also

18 denies defendants' motion to dismiss Ms. Porter's claim on the grounds she was present when the

19 officers detained her father, daughters and niece at gunpoint.

20       **J.**     **Negligence (Claim Twelve)**

21       To plead a claim of negligence, a complaint must allege the defendant breached a duty of

22 care to the plaintiff and caused an injury. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629

23 (2013). Unless the law provides otherwise, public employees are liable to the same extent as

24 private persons, and "public entities are generally liable for injuries caused by the negligence of

25 their employees acting in the scope of their employment." *Id.* Alternatively, plaintiffs can allege

26 facts showing the Dixon defendants aided or abetted negligent actions. *See Navarrete v. Meyer*,

27 237 Cal. App. 4th 1276, 1290 (2015).

22

The court denies defendants' motion to dismiss the negligence claims against the officers for the same reasons plaintiffs state Fourth Amendment claims against defendants. *See supra* sections III.B.1–3.

## IV.   CONCLUSION

For the reasons discussed above, **the court denies the Dixon defendants' motion to dismiss, except as to the following claims:**

- The court **grants** defendants' motion to dismiss plaintiffs' equal protection act claims with leave to amend;

- The court **grants** defendants' motion to dismiss plaintiffs' Ralph Act claims with leave to amend;

- The court **grants** defendants' motion to dismiss plaintiffs' assault and battery claims as to Ms. Porter with leave to amend; and

- The court **grants** defendants' motion to dismiss plaintiffs' battery as to the minor children with leave to amend.

Plaintiffs shall file any amended complaint within 30 days.

This order resolves ECF No. 26.

IT IS SO ORDERED.

DATED:  December 20, 2022.

CHIEF UNITED STATES DISTRICT JUDGE

23