1 Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
2 4695 MacArthur Ct., Suite 1100
Newport Beach, CA 92660
3 (949) 877-7177 | YMA@LawAlm.com

4 Ahmed Ibrahim (Cal. Bar No. 238739)
AI LAW, PLC
5 4695 MacArthur Ct., Suite 1100
Newport Beach, CA 92660
6 Tel:  (949) 266-1240
Fax:  (949) 266-1280
7 aibrahim@ailawfirm.com

8 *Attorneys for Plaintiffs*

9

10 **UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11 **SACRAMENTO DIVISION**

12

| | |
|---|---|
| 13 NAKIA V. PORTER, an individual on her own behalf and on behalf of her minor children, L.P. and A.P; JOE BERRY POWELL, JR., an individual; and CLIFTON POWELL, on behalf of his minor child, O.P., | Case No. 2:21-CV-01473-KJM-JDP |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | Hon. Kimberly J. Mueller |
| COUNTY OF SOLANO; SOLANO COUNTY SHERIFF'S OFFICE; SHERIFF THOMAS A. FERRARA, in his official capacity as Sheriff of Solano County; DEPUTY DALTON MCCAMPBELL, an individual; DEPUTY LISA MCDOWELL, an individual; SERGEANT ROY STOCKTON, an individual; DEPUTY CONNOR HAMILTON, an individual; DEPUTY CHRIS CARTER, an individual; CITY OF DIXON; DIXON POLICE DEPARTMENT; DIXON POLICE CHIEF ROBERT THOMPSON, in his official capacity as Dixon Chief of Police; OFFICER GABRIEL HOLLINGSHEAD, an individual, OFFICER AARON WILLIAMS, an individual, and DOES 1 to 10, inclusive, | United States District Judge **Hearing Information:** Date:          July 12, 2024 Time:          10:00 a.m. Judge:         Hon. Kimberly J. Mueller Courtroom:  3, 15th Floor |
| Defendants. | |

13
14
15
16 Plaintiffs,
17 v.
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE THAT** on July 12, 2024 at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 3 of the above-captioned Court located on the 15th floor of the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, Plaintiffs Nakia V. Porter, on behalf of herself and her two daughters, L.P. and A.P., Joe Berry Powell, Jr., and Clifton Powell, on behalf of his daughter, O.P. (collectively, "Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move for an order pursuant to the inherent authority of the Court and Rule 37 of the Federal Rules of Civil Procedure to impose sanctions against Defendants County of Solano, Solano County Sheriff's Office, and Lisa McDowell for the destruction of highly relevant body camera footage of the subject August 6, 2020 incident underlying this action. Plaintiffs seek sanctions in the form of an adverse inference jury instruction, an award of attorneys' fees incurred in attempting to seek the destroyed McDowell body camera video, and expert witness costs necessitated by Plaintiffs not having received possession of the destroyed video.

Undersigned counsel certifies that meet and confer efforts between counsel have been exhausted. Counsel for Plaintiffs and all implicated Defendants conferred by telephone for the final time on May 14, 2024, regarding the spoliation issue raised in this motion. Prior to this, undersigned counsel raised this issue several times with Defendants without resolution. *See* Almadani Decl. ¶¶ 8-10, Exs. 7 and 8.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Yasin Almadani, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court. All exhibits appended to the motion via Dropbox link, due to large file size, are also being delivered to the Court via flash drive.

Dated: May 15, 2024

ALMADANI LAW

*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.

AI LAW, PLC

*/s/ Ahmed Ibrahim*
Ahmed Ibrahim, Esq.
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD .................................................................................................... 3

III.  FACTS SUPPORTING SPOLIATION BY A PREPONDERANCE OF THE EVIDENCE

..................................................................................................................................... 3

    A.  Operation of the Axon Body 2 Cameras ........................................................... 4

    B.  Suppression of McDowell's Body Camera Footage .......................................... 4

    C.  The County Protected and Failed to Investigate the Suppression of Evidence .... 6

    D.  The SCSO Has a Strong Motivation to Suppress the Evidence .......................... 6

    E.  The SCSO and Its Deputies Are Not Credible ................................................. 8

    F.  Plaintiffs' Efforts to Have Solano County Preserve and Produce This Highly Relevant

       Evidence Have Failed ..................................................................................... 10

IV.  STRONG SANCTIONS MUST BE IMPOSED ......................................................... 11

    A.  Plaintiffs Have Satisfied Their Preponderance Burden .................................... 11

    B.  Sanctions Should be Awarded for Spoliation ................................................. 11

       1.  Deputy McDowell and the SCSO Had an Obligation to Preserve and Produce All of Her Body

           Camera Video Evidence .......................................................................... 13

       2.  McDowell and the SCSO Destroyed the Video Evidence with a Culpable State of Mind ....... 14

       3.  The Video Evidence Was Indisputably Relevant to Plaintiffs' Claims ................................ 15

    C.  The Court Should Impose the Harshest Form of an Adverse Inference Sanction .............. 15

    D.  The Court Should Also Award Plaintiffs Their Attorneys' Fees and Expert Costs ........... 17

V.  CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Aguirre v. Home Depot U.S.A., Inc.*,
No. 1:10-CV-00311-LJO, 2012 WL 3639074 (E.D. Cal. Aug. 23, 2012) ......... 14

*Akiona v. United States,*
938 F.2d 158 (9th Cir. 1991) ............................................................ 12

*Apple Inc. v. Samsung Elecs. Co.,*
888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................. *passim*

*Caruso v. Solorio,*
No. 1:15-CV-780 AWI EPG (PC), 2021 WL 3514610 (E.D. Cal. Aug. 10, 2021)
..................................................................................................... 11, 12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........................................................................ 15

*Compass Bank v. Morris Cerullo World Evangelism,*
104 F. Supp. 3d 1040 (S.D. Cal. 2015)............................................. *passim*

*Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.,*
265 F.R.D. 510 (E.D. Cal. 2010) .................................................. 12, 13, 16

*Crema v. Las Vegas Metro. Police Dep't,*
No. 2:17-cv-01535-RFB-VCF, 2023 WL 6262556 (D. Nev. Sept. 25, 2023) .... 13

*Earp v. Davis*,
881 F.3d 1135 (9th Cir. 2018) ........................................................12

*Glover v. BIC Corp.,*
6 F.3d 1318 (9th Cir. 1993) ......................................................... 3, 12

*Johnson v. Sisodia,*
No. 1:12-cv-02044-SAB (PC), 2015 WL 1746553 (E.D. Cal. Apr. 16, 2015) ... 14, 15

*Leon v. IDX Sys. Corp.,*
464 F.3d 951 (9th Cir. 2006) ....................................................... *passim*

*Lopez v. Santoyo,*
No. 09cv00108 W(RBB), 2012 WL 5427957 (S.D. Cal. Nov. 7, 2012) ........... 14

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.,*
306 F.3d 806 (9th Cir. 2002) ....................................................... 3, 12

*Meta Platforms, Inc. v. BrandTotal Ltd.,*
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) ........................................................ 13, 17

*MGA Ent., Inc. v. Harris,*
   No. 2:20-CV-11548-JVS-AGR, 2023 WL 2628225 (C.D. Cal. Jan. 5, 2023) .... 3

*Mkrtchyan v. Sacramento County,*
   No. 2:17-CV-2366 TLN KJN, 2021 WL 5284322 (E.D. Cal. Nov. 12, 2021) ... 3

*Olney v. Job.com,*
   No. 1:12-CV-01724-LJO, 2014 WL 5430350 (E.D. Cal. Oct. 24, 2014) .......... 14

*Posner v. Hillstone Rest. Grp., Inc.,*
   No. 2:19-cv-00507-TLN-KJN, 2022 WL 705602 (E.D. Cal. Mar. 9, 2022) ...... 14

*Reinsdorf v. Skechers U.S.A., Inc.,*
   296 F.R.D. 604 (C.D. Cal. 2013) ........................................................ 12, 16, 17

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
   306 F.3d 99 (2d Cir. 2002) ........................................................................ 14

*Scalia v. County of Kern,*
   576 F. Supp. 3d 703 (E.D. Cal. 2021) ........................................................ 17

*Unigard Security Ins. Co. v. Lakewood,*
   982 F.2d 363 (9th Cir. 1992) ........................................................ 14, 17

*Wyle v. R.J. Reynolds Indus. Inc.,*
   709 F.2d 585 (9th Cir. 1983) ........................................................................ 3

*U.S. Legal Support, Inc. v. Hofioni,*
   No. 2:13-cv-0770 LKK AC, 2014 WL 172336 (E.D. Cal. Jan. 15, 2014) ......... 3

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 37 ............................................................................ 3, 12, 13, 17

*Plaintiffs' Motion for Sanctions for Spoliation of Evidence*          *2:21-CV-01473-KJM-JDP*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        On August 6, 2020, while Plaintiff Nakia Porter ("Ms. Porter") was returning home from a family

4   trip to Oakland with her elderly father and three small children, Solano County Sheriff's Office ("SCSO")

5   Deputies Dalton McCampbell ("Deputy McCampbell") and Lisa McDowell ("Deputy McDowell")

6   (collectively, the "Defendant Deputies") arrested Ms. Porter and took her out of the view of the dash

7   camera where Deputy McCampbell proceeded to beat her unconscious, starting the beating by slamming

8   Ms. Porter into the asphalt by her head while she was still in handcuffs. Deputy McCampbell and Sergeant

9   Stockton's body camera footage shows that Deputy *Lisa McDowell's* body camera was on and recording

10  from approximately **9:15 p.m. to 9:33 p.m.**, which would have captured this graphic beating from *a*

11  *third-person observer's perspective*. Yet Deputy McDowell, the SCSO, and Solano County have taken

12  the position that the video does not exist, only producing footage of the beating from *the first-person*

13  *perspective* of Deputy McCampbell, who committed the bulk of the assault. But the first-person

14  perspective (McCampbell's footage) requires some forensic analysis to fully understand and appreciate

15  what occurred whereas the third-person perspective (McDowell's footage) would contain the most clear

16  and graphic evidence of the beating seen from an observer's perspective. This is the evidence that has

17  been either suppressed or destroyed. Given Defendants' untenable position that the video does not exist,

18  Plaintiffs are unable to compel its production and are left with no choice but to request an adverse

19  inference instruction at trial and monetary sanctions for the significant time, effort, and expense they have

20  incurred to obtain the suppressed or destroyed video and to conduct a detailed forensically accurate

21  analysis and animation of Deputy McCampbell's first-person video to demonstrate the egregiousness of

22  the unjustified beating of Ms. Porter—a helpless, handcuffed, petite, Black woman.

23        Plaintiffs' burden here is to prove their position by a preponderance of the evidence, which they

24  have done for the following reasons.

25        *First*, using Deputy McCampbell's body camera footage, Plaintiffs show that the green light on

26  Deputy McDowell's camera was on at **9:15 p.m.**, indicating that the camera was on and recording in

27  buffered mode at that time, which was the time of the beating.

28        *Second*, using Sergeant Stockton's body camera footage, Plaintiffs show that, **at 9:33 p.m.**,

Deputy McDowell says the words, "*I'm turning off for admin*," after which she is seen turning off her body camera. Yet, Defendants have taken the position that the earliest recorded body camera footage from Deputy McDowell starts at **9:50 p.m.** Her own words and actions on video contradict this.

These two points alone are sufficient to satisfy the preponderance standard, but Plaintiffs have gone further.

*Third*, as a result of Defendants' suppression or destruction of this evidence, Plaintiffs have conducted a sophisticated forensic analysis of Deputy McCampbell's first-person perspective body camera footage, which shows that Ms. Porter was *still in handcuffs* when Deputy McCampbell slammed her head into the asphalt to start the beating. He claimed later that she "slipped the cuff" and "punched" him before he started the beating, which was the basis for her arrest and jailing. But the forensic analysis clearly shows otherwise—it shows evidence of felony assault by the Defendant Deputies. Deputy McDowell's third-person perspective body camera would have captured the felony assault and suppressing or destroying it provides the Defendant Deputies cover from civil *and criminal* liability, a strong motivation to suppress or destroy the evidence.

*Fourth*, to find in favor of Defendants would require the Court to take Defendants at their word in the face of objective evidence to the contrary, *and notwithstanding* that the Defendant Deputies have been caught on tape lying egregiously about the incident to protect themselves, as demonstrated below.

*Fifth*, Plaintiffs have recently discovered through Solano County's Rule 30(b)(6) deposition that Deputy McDowell and Sergeant Stockton violated the SCSO then-existing body camera policy, yet no investigation was done into this, and no consequence came of it, further pointing to a cover-up.

*Sixth*, Plaintiffs have recently obtained evidence from third parties—evidence which was also destroyed or suppressed and not produced by Defendants—showing that Sheriff Ferrara himself condoned and ran cover for a wildly extremist and racist culture withing the SCSO, showing a level of lawlessness and racism supported by the very top of the Sheriff's Office, further eroding any trust.

At bottom, the SCSO and its deputies have been operating as if they are above the law. They must be reined in and sanctioned if there is to be any hope for justice for Ms. Porter and her family and real public safety in Solano County.

## II.     LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051–52 (S.D. Cal. 2015).

There are two sources of authority under which a district court can sanction a party who has engaged in spoliation of evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); Fed. R. Civ. P. 37(b)(2)(A). Specifically, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). Further, Rule 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Johnson v. Sisodia*, No. 1:12-cv-02044-SAB (PC), 2015 WL 1746553, at *2 (E.D. Cal. Apr. 16, 2015) (citing *Wyle v. R.J. Reynolds Indus. Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).

"The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *U.S. Legal Support, Inc. v. Hofioni*, No. 2:13-cv-0770 LKK AC, 2014 WL 172336, at *3 (E.D. Cal. Jan. 15, 2014). "The moving party bears the burden to show spoliation by a ***preponderance of the evidence***." *MGA Ent., Inc. v. Harris*, No. 2:20-CV-11548-JVS-AGR, 2023 WL 2628225, at *2 (C.D. Cal. Jan. 5, 2023) (emphasis added); *see also Compass Bank,* 104 F. Supp. 3d at 1052-53 ("[T]he applicable standard of proof for spoliation in the Ninth Circuit appears to be by a preponderance of the evidence"); *Mkrtchyan v. Sacramento County*, No. 2:17-CV-2366 TLN KJN, 2021 WL 5284322, at *1 (E.D. Cal. Nov. 12, 2021) (same).

## III.    FACTS SUPPORTING SPOLIATION BY A PREPONDERANCE OF THE EVIDENCE

Based on the facts below, Plaintiffs believe they satisfy the preponderance standard to find spoliation and impose sanctions.

### A.     Operation of the Axon Body 2 Cameras

The SCSO body camera videos show that the SCSO uses model Axon Body 2 for their body cameras. (Ex. 1 at 20; Ex. 3; Ex. 4).[1] According to every manual produced by Axon—in response to Plaintiff's subpoena requesting "[a]ll instruction manuals, user guides, and specifications for the Axon Body 2 model body camera"—when an Axon Body 2 camera is turned on to record, it first goes into buffered recording mode (indicated by the LED blinking green) whereby the first 30 seconds of video is recorded without audio, and then subsequently, audio is also recorded along with video (indicated by the LED blinking red). (Ex. 1 at 20; Ex. 2). The buffered portion is saved as video-only without audio, and the rest of the recording is saved with both video and audio. (*Id*.).

### B.     Suppression of McDowell's Body Camera Footage

The earliest recorded body camera footage from Deputy McDowell produced by Defendants begins at **9:50 p.m.** Deputy McDowell testified that no earlier recording of the incident from her body camera exists or ever existed. (Ex. 5 (McDowell Dep.) at 362:6-363:13). This testimony is contradicted by the following objective evidence.

Deputy McCampbell's body camera footage at **9:15 p.m.** shows that, as Ms. Porter was being beaten unconscious, *Deputy McDowell's body camera LED was blinking green, indicating that the camera was on in buffered recording mode, recording video only, as seen below and on the recording attached as Exhibit 3.* (Ex. 1 at 21; Ex. 3).[2]



---

1   Due to large file size Exhibits 3 and 4 can be downloaded at the following link: https://www.dropbox.com/scl/fo/mb2iri24h3zfhxf4yu86n/AMo282eleYq7SASCc1aCYho?rlkey=l5xgojq1fzeq4hnl9b4fw12z0&st=txprcqb3&dl=0.
2   The Camera at the top right shows "04:15:47Z," which is Zulu time, translating to 9:15:14 PT.

*Plaintiffs' Motion for Sanctions for Spoliation of Evidence*                      2:21-CV-01473-KJM-JDP

1    Later, from Sergeant Stockton's body camera footage at **9:32 p.m.**, *Deputy McDowell's body*

2    *camera LED appears to be blinking red, indicating that it had been recording.* (Ex. 1 at 21; Ex. 4).



13    More importantly, within a minute, at **9:33 p.m.**, from Sergeant Stockton's body camera footage,

14    *Deputy McDowell is heard saying, "I'm turning off for admin," after which she reaches her hand over to*

15    *her body camera and turns it off, while Sergeant Stockton simultaneously turns off his body camera, as*

16    *shown below and on the recording, cementing the fact that the camera was on and recording.* (Ex. 1 at 21;

17    Ex. 4; Ex. 5 (McDowell Dep.) at 365:16-366:2).

Yet, even after acknowledging at deposition that she said she was turning off her body camera at this moment (9:33 p.m.), Deputy McDowell brazenly continued to deny that there was a body camera recording prior to 9:50 p.m.

The video evidence along with Deputy McDowell's admissions during deposition reveal that Deputy McDowell had her body camera on during the beating of Ms. Porter through Sergeant Stockton's arrival, after which they both turned off (not muted) their cameras to discuss the incident and tactics that were used during the incident. (Ex. 4; Ex. 5 (McDowell Dep.) at 366:12-367:25).

### C.   The County Protected and Failed to Investigate the Suppression of Evidence

It should be noted that Solano County (through Captain Bill Elbert (the Rule 30(b)(6) witness)) testified that, as of the date of the incident, the SCSO had a policy concerning body cameras, which was that deputies should recognize when it was appropriate to turn on the body-worn camera for any kind of incident that would cause recording of the incident. (Ex. 6 (Elbert Dep.) at 113:9-25). The policy allowed the camera to be muted *but not turned off* for "admin purposes," meaning that video should still be recording even if muting for "admin purposes." (Ex. 6 (Elbert Dep.) at 114:1-115:7). Under the policy, the "admin purpose" was any confidential discussion *not related to the incident*. (Ex. 6 (Elbert Dep.) at 114:1-115:7). The policy prohibited the deletion of any body-camera video without supervisor approval. (Ex. 6 (Elbert Dep.) at 114:1-115:7).

Deputy McDowell clearly appears to have run afoul of this body camera policy, yet there was no investigation into the mysteriously missing body camera footage or even why Deputy McDowell and Sergeant Stockton turned off the cameras instead of muting them per policy, further indicating a cover up by the SCSO. (*See* Ex. 6 (Elbert Dep.) at 72:10-74:8, 56:9-13).

### D.   The SCSO Has a Strong Motivation to Suppress the Evidence

The strong motivation for suppressing Deputy McDowell's body camera footage is revealed by Plaintiffs' forensic analysis, which captures the reality of the Defendant Deputies' felony assault on Ms. Porter and exposes the Deputies' lies, which the top brass at the SCSO have covered up and supported.

**Exhibit 9** is an expert report (including forensically analyzed videos) explaining the detailed forensic analysis Plaintiffs' nationally renowned expert performed using the videos that were produced in this case, including Deputy McCampbell's body camera footage. Due to large file size, a true and correct

copy of the expert report and forensically analyzed videos can be downloaded at the following link:

https://www.dropbox.com/scl/fo/0x1ijklclbp6vd07nq0jk/APpjIQNrRjGwpY9LDHf0T9E?rlkey=mvau1oaoairtcp5bzy3x24epc&st=ipc4ce7e&dl=0.

**Exhibit 9-1** (the forensically analyzed video of Ms. Porter's beating) shows that the SCSO Deputies took Ms. Porter outside the view of the dash camera (which would have recorded her beating similar to Deputy McDowell's missing footage), and Deputy McCampbell beat her unconscious, starting the beating while she was still in handcuffs. His body camera recording was produced, but because he was moving so fast and violently as he beat down Ms. Porter, his body camera footage required forensic analysis to appreciate the extent of Ms. Porter's assault, which both Deputies lied about at the scene and in their reports. The footage from Deputy McDowell's body camera that is being suppressed would have shown this by virtue of her third-person vantage point of Deputy McCampbell delivering the beating.

Indeed, when Deputy McCampbell's body camera footage is examined carefully at the moment he initiates the beating by slamming Ms. Porter to the asphalt, Ms. Porter's hands are still in handcuffs, as seen in the still image below and in the video in **Exhibit 9-1**. In his police report, Deputy McCampbell calls it a "hair pull takedown." (Ex. 10).

 

The footage in **Exhibit 9-1** shows that Deputy McCampbell slammed Ms. Porter to the ground by her head while she was still in handcuffs, contrary to his claim on the scene and in his police report that Ms. Porter "slipped the cuff" and "punched" him before he took her down. (*Compare* Exs. 9-1, 9-4, and 9-6 to Ex. 10). Indeed, even Deputy McDowell, who was standing right there aiding and abetting the assault, testified, "Once she [Ms. Porter] was on the ground, I saw him [Deputy McCampbell] deliver hand strikes.

7

1  *But when they were both in the standing position, <u>when the cuff came out, I didn't see that, and I didn't see</u>*

2  *<u>what happened that led up to her being taken to the ground.</u>*" (Ex. 5 (McDowell Dep.) at 294:8-15 (emphasis

3  added)). At another point in the deposition, Deputy McDowell confirmed that she did not personally

4  observe the "punch" from Ms. Porter that Deputy McCampbell alleges and that McDowell's sole

5  foundation for stating this in her report (Ex. 11) was that Deputy McCampbell said it after the fact. (Ex. 5

6  (McDowell Dep.) at 281:2-282:4).

7      Had Solano County produced Deputy McDowell's body camera footage of the beating, Plaintiffs

8  would not have been put to the expense of having to conduct a detailed forensic analysis of Deputy

9  Campbell's first-person body camera footage. Moreover, Deputy McDowell's missing footage from the

10  third-person perspective would have allowed the jury to see from the video itself the graphic violence

11  inflicted upon Ms. Porter and thus further exposed the Deputies' brazen lies, as well as the County's active

12  protection of the Defendant Deputies despite their unconstitutional and criminal acts.

13      More specifically, the video would have also exposed the gravity of the assault where Ms. Porter,

14  being in handcuffs at the time of the "hair pull takedown," would not have been able break her fall and her

15  head probably hit the asphalt very hard, which is clearly "force likely to produce great bodily injury" in

16  violation of California Penal Code section 245 (felony assault). In fact, it appears the impact of the fall was

17  so hard that the handcuff came loose after Ms. Porter was taken to the ground. The motivation to conceal

18  Deputy McDowell's third-person perspective video of McCampbell's felony assault of a petite, handcuffed,

19  Black woman is obvious, especially in light of the culture of extremism and racism that has been condoned

20  and protected by the Sheriff himself. (Ex. 1 at 25-28; Ex. 12 (Expert Report of Professor Peter Simi)).[3] The

21  Deputies are shielding themselves from civil and *criminal* liability with the support of their Office.

22  **E.      The SCSO and Its Deputies Are Not Credible**

23      In contrast to the objective evidence of spoliation offered by Plaintiffs, Defendants insist that the

24  video does not exist and claim that their words must be trusted. This "trust-us" approach is insufficient,

25  especially here, where the factual record demonstrates that the SCSO Deputies lack credibility, as

26

---

27  [3] Due to large file size, **Exhibit 12** may be downloaded at the following link:
https://www.dropbox.com/scl/fi/crchp15k9szxqyrag408a/Ex.-12-Simi-Rule-26-Expert-Report-

28  Porter.pdf?rlkey=dq1fx9e31us9309en375enumr&st=87j7aaj6&dl=0.

1   demonstrated by their bold lies at the scene on the basis of which they arrested and jailed Ms. Porter,

2   followed up by brazen lies in their police reports, which they submitted to have Ms. Porter prosecuted

3   even though false reporting is a felony under California Penal Code section 118.1. The Court will note

4   that a pending criminal case would have precluded Ms. Porter from moving forward with her civil action

5   during the pendency of the criminal case.

6       Examples of the SCSO Deputies' brazen lies are described below and depicted in **Exhibits 9-4**

7   **and 9-6**, which should be viewed after **Exhibits 9-1, 9-2, and 9-3** to fully appreciate the extent of lies

8   and misleading statements by the Defendant Deputies.

9       Deputies McCampbell and McDowell presented an exaggeratedly ominous scene and falsely

10  depicted Ms. Porter as a combative and non-compliant person, leaving out important material details of

11  her innocence and their own culpability. (**Exhibits 9-4 and 9-6**, which, for context should be viewed after

12  **Exhibits 9-1**, **9-2, and 9-3**).

13      When the paramedics arrived at the scene, Ms. Porter requested that they transport her to the

14  hospital. Deputies McCampbell and McDowell denied the request, continuing to lie to the paramedics by

15  minimizing the injuries they had inflicted on Ms. Porter. (*Id.*). As captured on body camera footage,

16  Deputy McCampbell said that Ms. Porter had been unconscious for a total of "no more than twenty (20)

17  seconds." Meanwhile, Deputy McDowell minimized the assault even more egregiously, saying that Ms.

18  Porter had been unconscious for "five (5) seconds." Both of these descriptions are provably false as Ms.

19  Porter was unconscious for over five (5) minutes, and the deputies knew they were lying. (*See* **Exhibits**

20  **9-1, 9-3,** and **9-4**). In fact, Deputy McCampbell had carried Ms. Porter to the Sheriff's vehicle and tossed

21  her inside while she was unconscious, but he lied that she was able to move her legs and walk to the car

22  so that he could minimize her injuries. (*Id.*). The deputies also told several other lies to blame and

23  criminalize Ms. Porter when they were the actual aggressors. (*Id.*). Based on these lies, the Defendant

24  Deputies continued to keep Ms. Porter separated from her children and transported her to the Solano

25  County jail, where she was held overnight, searched, and treated like a criminal. (*Id.*).

26      To make matters worse, the Defendant Deputies' supervising sergeant, Defendant Roy Stockton,

27  approved falsified police reports as accurate even after viewing the body and dash camera footage, which

28  clearly shows the reports to be misleading and exaggerated. (Ex. 14 (Stockton Dep.) at 26:7-27:19, 60:18-

*Plaintiffs' Motion for Sanctions for Spoliation of Evidence*                    *2:21-CV-01473-KJM-JDP*

61:9). On the basis of these false reports, the SCSO recommended to the Solano County District Attorney's Office that Ms. Porter be criminally prosecuted. (*See* Ex. 13 (McCampbell Dep.) at 43:10-44:6; Ex. 5 (McDowell Dep.) at 249:2-14; Ex. 14 (Stockton Dep.) at 60:18-61:9). Viewing the police reports (**Exhibits 10 and 11**) in combination with the analysis of the body and dash camera footage in **Exhibits 9-1, 9-2, 9-3, 9-4, and 9-6**, it is inconceivable that any officer, let alone a supervising sergeant, reviewing the video footage could have legitimately approved the reports as the distortion in those reports leaps out from the pages when reviewed in conjunction with the videos.

As a result of unlawfully being submitted for prosecution, Ms. Porter had bond restrictions placed on her, which restricted her from traveling and required her to check in with the bail bond company on a weekly basis—conditions that would understandably be stressful and humiliating for any professional like Ms. Porter. On September 28, 2020, the District Attorney's Office declined prosecution, filing a Notice of Intent Not to Prosecute. (Ex. 15).

Defendants' numerous lies and misleading statements about this incident demonstrate their lack of credibility and bad faith. Their unlawful and criminal conduct was made possible partly by the suppression of Deputy McDowell's body camera footage.

### F.    Plaintiffs' Efforts to Have Solano County Preserve and Produce This Highly Relevant Evidence Have Failed

Even though arresting and submitting Ms. Porter for prosecution automatically triggered Defendants' evidence preservation obligations, Plaintiffs additionally made numerous preservation requests—on January 12 and 13, February 3, and April 23, 2021—to Solano County and the Solano County Sheriff's Office. (Ex. 7). These requests encompassed Deputy McDowell's mysteriously missing video, even calling out the missing video specifically after an incomplete set of videos was produced in response to a Public Records Act request by Plaintiffs. (*Id.*).

Plaintiffs' counsel proceeded to meet and confer with Defendants' counsel multiple times on this issue after this case was filed and gave Defendants every opportunity to come clean and avoid this Motion. (Almadani Decl. at ¶ 10). But the requests fell on deaf ears. When all else failed, Plaintiffs' counsel emailed Solano's counsel the following on March 29, 2024:

> We believe that the Solano County Sheriff's Office and the subject officers have engaged in the suppression/spoliation of evidence in the form of body

camera footage of Lisa McDowell recorded from the time Ms. Porter was being assaulted by the deputies through the time Deputy McDowell met with Sgt. Stockton on the scene. We have met and conferred with you several times on this issue, and you have stated that the Sheriff's Office's position is that no such footage exists. We believe the Sheriff's Office's position not credible for the reasons we have shared with you during our meetings. This puts us in an impossible situation. Because the Sheriff's Office refuses to truthfully acknowledge and produce the footage, filing a motion to compel would do little good. As such, if the video footage is not acknowledged and produced to us, we will be left with no choice but to move the Court for an appropriate remedy come trial.

(Ex. 8).

Plaintiffs' counsel received no response to this email. (Almadani Decl. at ¶ 9).

## IV.   STRONG SANCTIONS MUST BE IMPOSED

### A.   Plaintiffs Have Satisfied Their Preponderance Burden

Based on the foregoing, it is far more likely than not that Defendants have suppressed/destroyed Deputy McDowell's body camera footage of events from approximately 9:14 p.m. to 9:33 p.m. on the night of the incident. While Defendants claim that the footage never existed, this claim is belied by the objective evidence on video, including the green light on the camera seen at 9:15 p.m. along with Deputy McDowell's words where she is heard and observed turning off the recording "for admin" at 9:33 p.m. Forensic analysis demonstrates that this footage would have been devastating to Defendants and would have subjected the offending Deputies to criminal liability, which provides a strong motivation to suppress it. The objective evidence further shows that SCSO deputies have lied time and again in this case and cannot be trusted, and the SCSO has suppressed other damaging evidence and covered up its extremist and racist culture. Defendants' response has been to tell Plaintiffs (as they likely will tell this Court) to ignore the objective evidence to the contrary and take Defendants at their word despite their lies.

Based on this record, Plaintiffs have easily carried their burden to show by a preponderance of the evidence that the Solano County Sheriff's Deputies have engaged in spoliation of highly relevant and damaging evidence in a show of bad faith. Strong sanctions must be levied.

### B.   Sanctions Should be Awarded for Spoliation

"Among the sanctions available to a court are default or dismissal of claims or defenses, preclusion of evidence, an adverse inference instruction, and monetary sanctions." *Caruso v. Solorio*, No.

1  1:15-CV-780 AWI EPG (PC), 2021 WL 3514610, at *9 (E.D. Cal. Aug. 10, 2021) (citing *Leon*, 464 F.3d

2  at 958-59, and *Glover*, 6 F.3d at 1329).

3      "The adverse inference is based on two rationales, one evidentiary and one deterrent." *Id.* (citing

4  *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)). "The evidentiary rationale is nothing more

5  than the common sense observation that a party who has notice that a document is relevant to litigation

6  and who proceeds to destroy the document is more likely to have been threatened by the document than

7  is a party in the same position who does not destroy the document." *Id.* "The deterrent rationale seeks to

8  use the inference to deter 'parties from destroying relevant evidence before it can be introduced at trial.'"

9  *Id.* (quoting *Akiona*, 938, F.2d at 161).

10      A district court "has the broad discretionary power to permit a fact-finder to draw an adverse

11  inference" from the destruction or spoliation of evidence against the party or witness responsible for that

12  behavior. *Earp v. Davis*, 881 F.3d 1135, 1143 (9th Cir. 2018); *see also Caruso*, 2021 WL 3514610, at

13  *9. That is, a court may sanction the party responsible for the spoliation "by instructing the jury that it

14  may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party."

15  *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002)

16      To decide which specific spoliation sanction to impose, courts generally consider three factors:

17  (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice

18  suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial

19  unfairness to the opposing party. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal.

20  2013) (citing *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012)); *see also*

21  *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 533 (E.D. Cal. 2010) (same).

22  The sanction should be designed to (1) deter parties from destroying evidence; (2) place the risk of an

23  erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction;

24  and (3) restore the party harmed by the loss of evidence helpful to its case to where the party would have

25  been in the absence of spoliation. *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp.

26  3d 1040, 1052 (S.D. Cal. 2015); *Apple*, 888 F. Supp. 2d at 992 n.10; *Reinsdorf*, 296 F.R.D. at 626.

27      Similarly, under Rule 37:

28      If electronically stored information that should have been preserved in the

anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

To determine whether an adverse inference spoliation instruction is warranted, the majority of courts use a three-part test consisting of the following elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed with a "culpable state of mind;" and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Compass Bank*, 104 F. Supp. 3d at 1054; *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1236 (N.D. Cal. 2022) (same).

### 1. Deputy McDowell and the SCSO Had an Obligation to Preserve and Produce <u>All</u> of Her Body Camera Video Evidence

"A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Compass Bank,* 104 F. Supp. 3d at 1051. "The duty to preserve relevant evidence can arise even before the commencement of litigation, and sanctions may be imposed if Defendants knew or should have known that the evidence destroyed was potentially relevant." *Continental Casualty,* 265 F.R.D. at 532–33 (internal quotations omitted). For example, the duty to preserve exists where "[c]riminal litigation stemming from" an incident involving law enforcement "was foreseeable" and body camera footage of the incident would have been material and relevant to the "Plaintiff's criminal prosecution." *Crema v. Las Vegas Metro. Police Dep't*, No. 2:17-cv-01535-RFB-VCF, 2023 WL 6262556, at *4 (D. Nev. Sept. 25, 2023).

"Once the duty to preserve attaches, a party must 'suspend any existing policies related to deleting

or destroying files and preserve all relevant documents related to the litigation.'" *Compass Bank,* 104 F. Supp. 3d at 1052 (quoting *Lopez v. Santoyo,* No. 09cv00108 W(RBB), 2012 WL 5427957, at *6 (S.D. Cal. Nov. 7, 2012))

Here, the duty to preserve all of Deputy McDowell's body camera footage was triggered on the night of the event (even prior to Plaintiff's preservation request), because Defendants had submitted Ms. Porter for prosecution and the footage would have been evidence (in fact, *Brady* evidence) in that prosecution. This factor therefore favors granting Plaintiffs' motion.

### 2. *McDowell and the SCSO Destroyed the Video Evidence with a Culpable State of Mind*

The second part of the three-part test for an adverse inference instruction is considering whether the evidence was destroyed with a "culpable state of mind." *Compass Bank*, 104 F. Supp. 3d at 1054.

"In determining the requisite state of mind, 'bad faith is not the required mental state[,] . . . [a]ll that the court must find is that [the spoliator] acted with a 'conscious disregard' of its obligations." *Posner v. Hillstone Rest. Grp., Inc.*, No. 2:19-cv-00507-TLN-KJN, 2022 WL 705602, at *5 (E.D. Cal. Mar. 9, 2022) (quoting *Apple*, 881 F. Supp. 2d at 1147); *see also Unigard Security Ins. Co. v. Lakewood*, 982 F.2d 363, 368 n.2 (9th Cir. 1992) (finding while bad faith may be sufficient for sanctions, it is not necessary). Rather, "[a]t a minimum, the culpable state of mind is negligence." *Olney v. Job.com*, No. 1:12-CV-01724-LJO, 2014 WL 5430350, at *13 (E.D. Cal. Oct. 24, 2014); *see also Aguirre v. Home Depot U.S.A., Inc.*, No. 1:10-CV-00311-LJO, 2012 WL 3639074, at *3 (E.D. Cal. Aug. 23, 2012) ("[T]he 'culpable state of mind' factor 'is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'") (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)). Stated another way, "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959 (internal quotations omitted). Thus, "whether Defendant destroyed the potentially relevant evidence intentionally or unintentionally is of no consequence, as Plaintiff may obtain an adverse inference instruction in the absence of bad faith." *Posner*, 2022 WL 70502, at *5 (citing *Unigard*, 982 F.2d at 368 n.2).

In this case, there can be no doubt concerning the relevance of or notice to preserve Deputy

McDowell's body camera footage recorded between 9:15 p.m. and 9:33 p.m. When the Sheriff's Deputies decided to arrest and submit Ms. Porter for prosecution, they were all on notice that all body camera footage must be preserved and produced, not to mention Plaintiffs' numerous preservation requests thereafter. Thus, culpable state of mind or willfulness is easily satisfied.

### 3.    The Video Evidence Was Indisputably Relevant to Plaintiffs' Claims

"In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple*, 888 F. Supp. 2d at 993 (internal citations omitted). In other words, the despoiling party cannot assert a presumption of irrelevance as to destroyed evidence. *Leon*, 464 F.3d at 959.

 Here, the relevance of the missing footage is obvious, and Defendants' suppression of it additionally triggers the Ninth Circuit's relevance presumption.

### C.    The Court Should Impose the Harshest Form of an Adverse Inference Sanction

Having demonstrated that adverse inference sanctions should be imposed, the next question is what type of adverse inference sanction should be awarded to Plaintiffs.

When applied, adverse inference jury instructions range in their level of severity. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (finding the court's choice of sanction should be commensurate to the spoliator's conduct); *see also Apple,* 881 F. Supp. 2d at 1150 ("[C]ourts have formulated adverse inference instructions that range in their level of severity."); *Compass Bank*, 104 F. Supp. 3d at 1054 ("The degree of harshness of the instruction should be dictated by the nature of the spoliating party's conduct-the more egregious the conduct, the more harsh the sanction."). In its harshest form, "when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true." *Apple*, 881 F. Supp. 2d at 1150. At the next level, "when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption." *Id.* "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (emphasis in original and quotations omitted). At the other end of the spectrum, "the least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Id.* "If it makes this presumption, the spoliating party's rebuttal

evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party." *Leon,* 464 F.3d at 959.

Here, Defendants' bad faith and willfulness are clear and inexcusable. They are demonstrated by the Deputies' repeated lies about Ms. Porter's beating coupled with the fact that forensic analysis shows the suppressed/destroyed footage would have decimated the Deputies' story and subjected them to civil *and criminal* liability. To make matters worse, the Deputies not only lied about their assault of Ms. Porter, but they also lied about the duration Ms. Porter was unconscious (preventing her from receiving proper treatment), and they took her to jail on an objectively false story, attempting to have her prosecuted on the basis of that false story, all to save their own skin. Bad faith here cannot be overstated, and the SCSO's "trust us, there is nothing here to see" approach must be rejected. Otherwise, every police or sheriff's department would be incentivized to bury damaging body and dash camera footage and claim it never existed, which does occur. (*See* Ex. 1 (Expert Report of Lt. Clark (Ret.) at 23 ("In my experience, this would not be the first time a law enforcement department suppressed evidence to cover up the unlawful acts of its officers and escape liability. This is unfortunate but it does occur . . . .").

Defendants' degree of fault for suppressing/destroying the evidence at issue is significant as is the degree of prejudice suffered by Plaintiffs. The Court must give a significant adverse inference instruction commensurate with Defendants' conduct to avoid substantial prejudice to Plaintiffs. *See Reinsdorf,* 296 F.R.D. at 626 (citing *Apple,* 888 F. Supp. 2d at 992; *see also Continental Casualty,* 265 F.R.D. at 533.

Plaintiffs request the following instruction be given at trial:

*You must presume the following facts as admitted and true: "On the night of the incident with Ms. Porter, Deputy McDowell's body camera was recording video footage for the period of approximately 9:15 p.m. to 9:33 p.m. Deputy McDowell and the Solano County Sheriff's Office either suppressed or destroyed this footage and have not produced it to Plaintiffs. You must presume that this video footage would have been adverse to Defendants and the positions they have taken had it been produced."*

Such an instruction would (1) deter Defendants from destroying evidence in the future, (2) place the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restore the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. *See Compass Bank,* 104 F. Supp. 3d at 1052; *Apple,*

16

888 F. Supp. 2d at 992 n.10; *Reinsdorf*, 296 F.R.D. at 626.

    **D.**    **The Court Should Also Award Plaintiffs Their Attorneys' Fees and Expert Costs**

    In addition to an adverse inference sanction, the Court should also impose monetary sanctions against Defendants in the form of an award of Plaintiffs' attorneys' fees incurred in attempting to seek remedy for the suppressed/destroyed McDowell body camera video, and Plaintiffs' expert witness fees incurred thus far due to not having the video from McDowell.

    Sanctions available for spoliation of evidence include "ordering the despoiling party to pay fees and costs associated with plaintiff's efforts to obtain information about the lost evidence and the sanctions motion itself." *Scalia v. County of Kern*, 576 F. Supp. 3d 703, 708 (E.D. Cal. 2021) (citing *Unigard Security Ins. Co. v. Lakewood*, 982 F.2d 363, 368–70 (9th Cir. 1992)); *see also Meta Platforms*, 605 F. Supp. 3d at 1241 ("An award of attorneys' fees for bringing a sanctions motion is an appropriate remedy for spoliation under Rule 37(e)(1) as 'measures no greater than necessary to cure the prejudice,' even where a party fails to show bad faith under Rule 37(e)(2).")

    Here, Plaintiffs have expended considerable attorney and expert resources to remedy the suppression/destruction of evidence by Solano County Sheriff's officers. It is only fair that Plaintiffs be compensated for these lost resources.

**V.**    **CONCLUSION**

    For the reasons stated above, Plaintiffs respectfully request the Court to GRANT this motion and issue an order that the requested adverse instruction shall be given at trial, as well as award the requested monetary sanctions upon proof of attorneys' fees and expert costs submitted by Plaintiffs.

Dated: May 15, 2024                    ALMADANI LAW

                                        */s/ Yasin M. Almadani*
                                        Yasin M. Almadani, Esq.
                                        AI LAW, PLC

                                        */s/ Ahmed Ibrahim*
                                        Ahmed Ibrahim, Esq.

                                        *Attorneys for Plaintiffs*