# EXHIBIT 5

**Remote Videotaped Deposition of: Lisa McDowell, Volume IB**

**Nakia V. Porter vs. County of Solano**

**January 23, 2024**



18881 Von Karman Ave., #1175, Irvine, CA 92612
P: 949.861.8680 | Email: info@kwcourtreporting.com

"We work twice as hard for you"

```
 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF CALIFORNIA

 3   NAKIA V. PORTER, an individual on her   )
     own behalf and on behalf of her minor   )
 4   children, L.P. and A.P.; JOE BERRY      )
     POWELL, JR., an individual; and CLIFTON )
 5   POWELL, on behalf of his minor child,   )
     O.P.,                                   )
 6                                           )
                     Plaintiffs,             )
 7                                           )
                                             )
 8                  VS.                      )Case No.: 2:21-
                                             )cv-01473-KJM-JDP
 9   COUNTY OF SOLANO; SOLANO COUNTY         )
     SHERIFF'S OFFICE; SHERIFF THOMAS A.     )
10   FERRARA, in his official capacity as    )
     Sheriff of Solano County; DEPUTY DALTON )
11   MCCAMPBELL, an individual; DEPUTY LISA  )
     MCDOWELL, an individual; SERGEANT ROY   )
12   STOCKTON, an individual; DEPUTY CONNOR  )
     HAMILTON, an individual; DEPUTY CHRIS   )
13   CARTER, an individual; CITY OF DIXON;   )
     DIXON POLICE DEPARTMENT; DIXON POLICE   )
14   CHIEF ROBERT THOMPSON, in his official  )
     capacity as Dixon Chief of Police;      )
15   OFFICER GABRIEL HOLLINGHEAD, an         )
     individual; OFFICER AARON WILLIAMS, an  )
16   individual; and DOES 1 to 10, inclusive,)
                                             )
17                   Defendants.             )
     _____)
18

19            REMOTE VIDEOTAPED DEPOSITION OF

20                     LISA MCDOWELL,

21          VOLUME IB (PAGES 182 THROUGH 375)

22            CONDUCTED VIA VIDEOCONFERENCE

23               Tuesday, January 23, 2024

24
     REPORTED BY: Kyle Miller, CSR No. 13282
25               Job No. 121315
```

                                                              182

```
 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF CALIFORNIA

 3

 4  NAKIA V. PORTER, an individual on her   )
    own behalf and on behalf of her minor   )
 5  children, L.P. and A.P.; JOE BERRY      )
    POWELL, JR., an individual; and CLIFTON )
 6  POWELL, on behalf of his minor child,   )
    O.P.,                                   )
 7                                          )
                    Plaintiffs,             )
 8                                          )
                                            )
 9            VS.                           )Case No.: 2:21-
                                            )cv-01473-KJM-JDP
10  COUNTY OF SOLANO; SOLANO COUNTY         )
    SHERIFF'S OFFICE; SHERIFF THOMAS A.     )
11  FERRARA, in his official capacity as    )
    Sheriff of Solano County; DEPUTY DALTON )
12  MCCAMPBELL, an individual; DEPUTY LISA  )
    MCDOWELL, an individual; SERGEANT ROY   )
13  STOCKTON, an individual; DEPUTY CONNOR  )
    HAMILTON, an individual; DEPUTY CHRIS   )
14  CARTER, an individual; CITY OF DIXON;   )
    DIXON POLICE DEPARTMENT; DIXON POLICE   )
15  CHIEF ROBERT THOMPSON, in his official  )
    capacity as Dixon Chief of Police;      )
16  OFFICER GABRIEL HOLLINGHEAD, an         )
    individual; OFFICER AARON WILLIAMS, an  )
17  individual; and DOES 1 to 10, inclusive,)
                                            )
18                  Defendants.             )
    _____)
19

20  Remote Videotaped Deposition of Lisa McDowell, Volume IB,

21  taken on behalf of the Plaintiffs, before Kyle Miller,

22  Certified Shorthand Reporter No. 13282 and Registered

23  Professional Reporter for the State of California,

24  commencing on Tuesday, January 23, 2024, via videoconference,

25  beginning at 2:31 p.m. and ending at 6:33 p.m.
```

183

```
 1  APPEARANCES OF COUNSEL:

 2

 3     FOR THE PLAINTIFFS:

 4          ALMADANI LAW
            By:  Yasin M. Almadani, Attorney-at-Law
 5          4695 MacArthur Court
            Suite 1100
 6          Newport Beach, California 92660
            (949) 266-1240
 7          yma@lawalm.com

 8          AI LAW, PLC
            By:  Ahmed Ibrahim, Attorney-at-Law
 9          4695 MacArthur Court
            Suite 1100
10          Newport Beach, California 92660
            (949) 266-1240
11          aibrahim@ailawfirm.com

12

13     FOR THE DEFENDANTS:

14          HAWKINS, PARNELL, THACKSTON & YOUNG, LLP
            By:  Danielle K. Lewis, Attorney-at-Law
15          33 New Montgomery Street
            Suite 800
16          San Francisco, California 94105
            (415) 979-2073
17          dlewis@hpylaw.com

18

19

20     ALSO PRESENT:

21          Vladimir Korneychuk, Videographer

22

23

24

25
```

184

```
 1                         INDEX

 2    Examination by:                               Page:

 3    MR. ALMADANI                                  187

 4

 5                     DEPOSITION EXHIBITS

 6                                                  Page:

 7    Exhibit 11A    4 pages    Unredacted CAD incident   188
                                report
 8
      Exhibit 156    15 pages   LD-22 - Vehicle           192
 9                              Pullovers

10    Exhibit 167    1 pages    CPC 853.5 -Custody        202
                                limitation for
11                              infraction

12    Exhibit 101    1 MP4      Dashcam video             203

13    Exhibit 12     1 page     Porter booking report     218

14    Exhibit 153    16 pages   LD - Use of force and     220
                                de-escalation
15
      Exhibit 152    23 pages   -LD-15 - Laws of Arrest   241
16
      Exhibit 165    19 pages   Green v. City of          246
17                                 SF-excessive force
                                during traffic stop
18
      Exhibit 9      5 pages    McDowell police report    249
19
      Exhibit 103    1 MP4      McCampbell bodycam of     254
20                              incident

21    Exhibit 154    150 pages  LD-33 - Arrest and        303
                                Control and cuffing
22
      Exhibit 105    1 MP4      McDowell bodycam -        358
23                              talking to Powell

24    Exhibit 104    1 MP4      Stockton bodycam of       364
                                incident
25
```

```
1                    Tuesday, January 23, 2024
2                     2:31 p.m. - 6:33 p.m. PST
3
4              (LISA MCDOWELL was previously called
5                 as a witness by the Plaintiffs)
6         VIDEOGRAPHER:  I'm Vladimir Korneychuk, your
7  videographer, and I represent KW Court Reporting, LLC,
8  in Irvine, California.  I'm not financially interested
9  in this action, nor am I a relative or employee of any
10 attorney or any of the parties.
11         The date is January 23, 2024.  The time is
12 2:31 p.m.
13         This deposition is taking place by
14 videoconference, with parties attending from various
15 locations; Case No. 221-cv-01473-KJM-JDP, in the
16 United States District Court, Eastern District of
17 California, entitled Porter, et al., versus County of
18 Solano, et al.  This deposition is being taken on behalf
19 of the plaintiff.  This begins the second part of
20 Volume 1 of the video deposition of Lisa McDowell.
21         The court reporter is Kyle Miller.
22         Would counsel please give their appearances
23 for the record, after which the reporter will administer
24 the oath.
25      MR. ALMADANI:  Yasin Almadani for plaintiff.
```

186

1      MR. IBRAHIM:  Good afternoon.  Ahmed Ibrahim for
2  plaintiffs.
3      MS. LEWIS:  Danielle Lewis for defendants and for
4  the witness.
5           And for the record -- for the record, we're
6  going back on the record after the morning session.
7      THE REPORTER:  And, ma'am, please raise your right
8  hand.
9           Do you solemnly state, under penalty of
10 perjury, the testimony you may give in this deposition
11 shall be the truth, the whole truth, and nothing but the
12 truth?
13     THE WITNESS:  Yes.
14     THE REPORTER:  Thank you.
15
16                      EXAMINATION
                        (continued)
17
18 BY MR. ALMADANI:
19     Q.  Okay.  Ms. McDowell, we're back on the
20 record.  I actually wanted to go back --
21     MS. LEWIS:  Actually -- I'm sorry.  Yasin, before
22 you go, can we just clarify for the record why the oath
23 is being administered a second time.  Because that's not
24 typical when we're in the same day.
25     MR. ALMADANI:  We've just changed court reporters.

187

```
 1  That's all.
 2          MS. LEWIS:  Okay.
 3          MR. ALMADANI:  Thank you.
 4  BY MR. ALMADANI:
 5      Q.   Okay.  So, Ms. McDowell, here we're -- I want
 6  to take you back to the CAD report that was marked as
 7  Exhibit 11.  And we've received an unredacted copy of it
 8  so that you can comment on it a little bit better.
 9          MR. ALMADANI:  And I appreciate that, Counsel.
10          And so we're gonna mark this as Exhibit 11A.
11          And also, just for the court reporter, we are
12  taking exhibits out of order here.  So in any case,
13  that's just for the record and for the reporter.
14                  (Exhibit 11A marked)
15  BY MR. ALMADANI:
16      Q.   Sergeant McDowell, we have -- can you see --
17  no.  That was not the right share.
18          Okay.  Sergeant McDowell, can you see this
19  CAD report here that we were looking at before,
20  previously?  It was Exhibit -- we were looking at
21  Exhibit 11.  Now we've got an unredacted copy of this
22  over the lunch break.  This is 11A.
23          Do you see that?
24      A.   Yes.
25      Q.   And do you recognize this to be the same
```

188

```
 1  BY MR. ALMADANI:
 2       Q.   Deputy McDowell -- or -- I'm sorry.
 3            Sergeant McDowell, you've reviewed your
 4  report; correct?
 5       A.   Correct.
 6       Q.   And that's the report that we were looking
 7  at, Exhibit 9; right?
 8       A.   Yes.
 9                 (Exhibit 9 marked)
10  BY MR. ALMADANI:
11       Q.   All right.  Yeah, you had testified that
12  report had been -- or your intent was to submit it to
13  the DA for prosecution; correct?
14       A.   Correct.
15       Q.   And so in your report writing, do you try to
16  be complete and accurate?
17       A.   Yes.
18       Q.   Did you provide the justifications for your
19  arrest, detention, stop of, you know, Ms. Porter or
20  Mr. Powell?  Did you accurately provide all of your
21  justifications within this report?
22       A.   Yes.
23       Q.   Do you have anything to add to this report?
24       A.   No.
25       Q.   Do you have anything to delete from this
```

249

1  so we can address the other occupants.
2          And at some point during this scuffle that
3  you reference, she had slipped her handcuff and punched
4  my partner in the face.  So he took her down to the
5  ground to try to gain control over her now free hand,
6  like her handcuffed -- one handcuffed hand --
7       Q.   You're --
8       A.   -- to get her back into handcuffs.
9       Q.   Your foundation for, you know, your assertion
10 or your allegation that "she punched my partner in the
11 face" --
12      A.   Yes.
13      Q.   -- is him telling you that "she punched me in
14 the face"; correct?
15      A.   Correct, after the fact, yes.  After she was
16 on the ground, yes.
17      Q.   Yes.
18          And that's when he told you that that had
19 occurred; correct?
20      A.   Correct.
21      Q.   And that's your -- your sole foundation
22 for -- because you believe your partner; right?
23      A.   Well, sole foundation for what?  Can you
24 please clarify.
25      Q.   For -- your sole basis or your foundation for

1  stating that "she punched my partner" -- right? -- is

2  because your partner told you that after the fact --

3  right? -- that that had occurred.

4       A.   Yes.

5       Q.   And so here, when this is occurring -- and

6  now, she's a person who's 5-2, on her driver's license

7  it says "135 pounds"; right?

8       A.   Correct.

9       Q.   You are 5-7, a hundred and -- what did you

10 say? -- 85 pounds?

11      A.   180.

12      Q.   180 pounds.  I didn't mean to -- I didn't

13 mean any offense.

14      A.   Okay.

15      Q.   So 180 pounds.

16           And Deputy McCampbell is -- would you say

17 he's a bigger stronger person than you?

18      A.   I -- honestly, I don't know.  It's hard.  We

19 have a lot of equipment on.  So to gauge his size truly,

20 I -- I don't want to make a guess of what I think.  I

21 mean, he's approximately my height.  I mean, men weight

22 versus women weight are extremely different; muscle, no

23 muscle, you know, like proportions.  I don't --

24      Q.   If you could --

25      A.   -- I don't feel comfortable.

1   MS. LEWIS:  You mean other than Mr. Powell?
2   THE WITNESS:  Yeah, in the --
3  BY MR. ALMADANI:
4       Q.   In the scuffle --
5       A.   Yes.
6       Q.   -- is what I meant.
7       A.   The three of us, yes.
8       Q.   And your testimony is that in that scuffle,
9  the only person -- or did -- is it your understanding,
10 did you see McCampbell hit Nakia Porter?
11      A.   Once she was on the ground, I saw him deliver
12 hand strikes.  But when they were both in the standing
13 position, when the cuff came out, I didn't see that, and
14 I didn't see what happened that led up to her being
15 taken to the ground.
16           So it was kind of like all -- I was still
17 trying to look at Nakia Porter's car.  Because as we're
18 walk- -- the whole purpose of walking backwards was to
19 try to keep a visual of the vehicle, just in case other
20 occupants come out.  So I wasn't watching Nakia Porter,
21 who were to my left, and McCampbell, who was assisting
22 walking her back.  My eyes were that way, and I was kind
23 of blind-step backwards, you know, to get back to my
24 patrol car.  So I didn't witness the occurrence of the
25 handcuff coming, you know, off, and then her being taken

```
 1  located in the -- kind of the left-hand side on the --
 2  on your uniform; right?
 3      A.   They're in the center of mine, but --
 4      Q.   Center of your uniform.
 5      A.   Yeah.
 6      Q.   Okay.  So let me show you Exhibit 103.
 7           So you're sure there's no other bodycam
 8  videos from you; right?
 9      A.   I'm positive.
10      Q.   Okay.  You don't have any bodycam video
11  that -- footage, according you to, prior to, you know,
12  the conversation that you had with Mr. Powell; correct?
13      A.   Of my video footage, no.  That's correct.
14      Q.   Okay.  So let me show you Exhibit 103.
15           And I want you to take a look at this.  This
16  is the scuffle with Ms. Porter.
17           Okay?
18      A.   Okay.
19      Q.   It's about 1 minute, 43 seconds, in.
20                (Video played)
21  BY MR. ALMADANI:
22      Q.   I'm stopping it now at 2 minutes and
23  5 seconds.
24           Do you see that green LED?  That's you right
25  there, in your uniform; correct?
```

362

1        A.    Yes, that's correct.
2        Q.    And that's a green LED that would be lit up
3   on a bodycam; right?
4        A.    Yes, when it's in a ready position.
5        Q.    Isn't it true that the green LED is lit when
6   it's recording?
7        A.    That's -- now I'm -- now I'm like starting to
8   think.  So one means that it's ready, and one means that
9   it's -- or in the ready, but on, and one means it's
10  recording.  Red, I believe, means recording.  Green
11  means that it's in the ready position.  So that
12  indicates that my video camera was in the ready
13  position.
14              And I can answer to the reason why it wasn't
15  active at that time, if you would like to ask that.
16       Q.    Well, you can give us your reason for why --
17  first of all, why you believe it wasn't active, but why
18  wasn't -- what's your reason why it wasn't activated?
19       A.    I believed it was activated, which is why --
20  like if you look into Sergeant Stockton's video camera,
21  where I say I'm turning off for admin, which was clearly
22  posted on whatever websites, I believed up to that point
23  that it was active the whole time.  Because in my mind,
24  green means go, on; red meant stopped.  It wasn't
25  recording.

363

1  is that green does mean it's recording.  But we
2  understand what your testimony is here.  Here's
3  Sergeant Stockton's, and I'll take it to the end.
4        MR. IBRAHIM:  Share your screen, Yasin.
5        THE WITNESS:  Yeah.  I can't see.
6        MS. LEWIS:  Yeah.  We can't see anything.
7        MR. ALMADANI:  Yes.  I apologize.
8  BY MR. ALMADANI:
9     Q.   This is about 1 minute and 12 seconds into
10 Sergeant Stockton's video.
11          And --
12       MS. LEWIS:  Is that an exhibit?
13       MR. ALMADANI:  This is Exhibit 104.
14                 (Video played)
15 BY MR. ALMADANI:
16    Q.   Do you hear yourself say, "I'm turning off
17 rabbit"?
18    A.   I said, "I'm turning off for admin," not
19 "rabbit."
20    Q.   "I'm turning off for admin."
21    A.   Yeah.  Like I'm having an administrative
22 discussion, like with my supervisor.  So I was turning
23 it off.
24    Q.   Okay.  Now, question:  Your -- when you say
25 "turning it off," that's the -- your hands are on the

365

1  body camera; right?  That's what you're referring to?
2     A.   Yes, the body-worn camera, correct.
3     Q.   At the same time Sergeant -- when you do
4  that, Sergeant Stockton turns off his camera; right?
5     A.   I can't testify to what he does at the exact
6  same time.
7     Q.   Okay.
8     A.   I believe so, based on his fingers in the way
9  right now.
10    Q.   Okay.
11    A.   I don't know.
12    Q.   So what is -- what does it mean to turn it
13 off for admin?  Is -- this is the middle of a -- you
14 know, an excessive force scene.
15    A.   Uh-huh.
16    Q.   So why are you turning off -- what's the
17 administrative discussion that you need to have with
18 Sergeant Stockton at this point that doesn't have to do
19 with this investigation?
20    A.   We discuss -- you know, my understanding of
21 the reason or justification for being able to turn off,
22 or we typically mute it.  I've since learned how to
23 operate the mute button where it doesn't take away from
24 what's happening, but is -- we'll just discuss tactics
25 that were used or whatever.  So that's something that we

366

1  are able to mute or turn off.  Typically, it's mute.
2  What I'm learning is that we would mute it in that
3  regard, you know, in the --
4       Q.   When you're discussing what?  Well, you mute
5  it or turn it -- you mute your body camera or turn it
6  off when you're discussing what?
7       A.   Tactics or any kind of tactics or -- you
8  know, things of that nature.
9       Q.   When you're discussing with your sergeant or
10 with other deputies what tactics were used during this
11 particular encounter; right?
12      A.   I discussed everything leading up to that
13 point or gave him a brief synopsis.  That was what I
14 turned off to tell him.
15      Q.   So this point -- at this point you're
16 (indiscernible) --
17      A.   Admin --
18      Q.   -- is to tell your sergeant about what had
19 occurred; is that right?
20      A.   I don't recall the specifics of what was
21 discussed, but yes, in a general --
22      Q.   And I believe you're --
23      A.   -- answer, yes.
24      Q.   Yes.  And I believe -- yes?
25      A.   Yes.

367

```
 1
 2              I, Kyle Miller, CSR No. 13282, certify:
 3              That the foregoing proceedings were taken
 4   before me at the time and place herein set forth; that
 5   prior to testifying, the deponent was placed under oath;
 6   that a verbatim record of the proceedings was made by me
 7   using machine shorthand which was thereafter transcribed
 8   under my direction; further, that the foregoing is an
 9   accurate transcription thereof.
10              The deponent's review, correction, and
11   signing of the transcript was requested, pursuant to
12   FRCP Rule 30(e)(1).
13              The dismantling, unsealing, or unbinding of
14   the original or certified transcript will render the
15   reporter's certificate null and void.
16              I further certify that I am not financially
17   interested in the action and that I am not a relative
18   nor an employee of any attorney or party to this action.
19
20              Dated this 6th day of February, 2023.
21
22
23              _____
                      Kyle Miller
24                 CSR NO. 13282
25
```

375